**The STATE of Ohio, Appellee,**

v.

**FARRIS, Appellant.**

[Cite as *State v. Farris* (1989), 62 Ohio App.3d 189.]

Court of Appeals of Ohio,
Ottawa County.

No. OT–88–30.

Decided April 28, 1989.

*Bruce Winters,* for appellee.

*Michael Sandwisch,* for appellant.

ABOOD, Judge.

This cause is before the court on appeal from a judgment of the Port Clinton Municipal Court, in which defendant-appellant, Robert B. Farris, was found guilty of a violation of R.C. 4511.19(A)(3), operating a motor vehicle while having a concentration of alcohol in excess of lawful limits.

Appellant sets forth the following assignments of error:

"1. The Trial Court erred to the prejudice of the Defendant in denying Defendant's Motion to suppress the results of the intoxilyzer.

"2. The Trial Court erred to the prejudice of the Defendant in failing to grant Defendant's Motion for Acquittal.

"3. The Trial Court erred to the prejudice of the Defendant in failing to allow admission of Defendant's blood test results.

"4. The Trial Court erred to the prejudice of the Defendant in failing to allow Defendant's expert to testify as to the effects of calibrations on the intoxilyzer, performed more than one week before and one week after Defendant's intoxilyzer test, as it effects Defendant's intoxilyzer test results.

"5. The Trial Court erred to the prejudice of the Defendant by instructing the Jury that the actual accuracy of the intoxilyzer is determined only by calibration tests.

"6. The verdict of the jury is against the manifest weight of the evidence."

While the facts will be more specifically discussed as they apply to the individual assignments of error, they may be summarized as follows:

On November 6, 1987, at approximately 11:07 p.m., State Trooper, Jeff Chio, stopped appellant after observing him speeding and weaving while heading west on State Route 163, in Portage Township, Ottawa County, Ohio. Due to the speeding and weaving and a moderate odor of alcohol on appellant's breath, Trooper Chio had appellant perform various field tests to check appellant's physical coordination for impairment due to alcohol. The tests performed by appellant consisted of the horizontal gaze nystagmus test, the walk and turn test, the one leg stand balance test and the finger-to-nose test. The results of all these tests indicated the presence of alcohol in appellant's system. Trooper Chio placed appellant under arrest for violation of R.C. 4511.19(A)(1) and 4511.19(A)(3),[1] advised him of his rights and transported him

---

1. R.C. 4511.19 reads, in pertinent part, as follows:
   "(A) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply:
   "(1) The person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse;

to the Port Clinton Police Department for an intoxilyzer test. Appellant's breath tested at .104 grams of alcohol per two hundred ten liters of breath. The intoxilyzer upon which appellant's breath was tested had been calibrated on November 2, 1987, four days prior to appellant's test, and again on November 9, 1987, three days after appellant's test, and indicated that the intoxilyzer used on appellant was in proper working order. Sometime after taking the intoxilyzer test, appellant was released on his own recognizance. Appellant, following his release, took a taxi from the police department to Magruder Hospital where he had a blood sample taken for purposes of having a separate test to determine his blood-alcohol level.

On January 25, 1988, a pretrial was held in appellant's case and on February 4, 1988, appellant filed a motion to suppress the results of the intoxilyzer. By judgment entry dated March 16, 1988, the trial court overruled appellant's motion. The case proceeded to jury trial on May 17, 1988, wherein the jury found the appellant not guilty of R.C. 4511.19(A)(1), but guilty of R.C. 4511.19(A)(3).

■ In his first assignment of error, appellant contends that the trial court erred in denying appellant's motion to suppress the results of the intoxilyzer. This claim is based on appellant's assertion that the intoxilyzer used on appellant produced results that were not within the range of variance permissible by law. Appellant argues that since the certificate for approval of calibration solution batch or lot number 87–11 (the calibration solution used to test the intoxilyzer used on appellant) states that the solution "will produce a reading of 0.105 g/21OL + .005" and not "+ or − .005" and the calibration test result of November 9, 1987 was .104, (which under appellant's argument is outside the stated variance of + .005), appellant's test result of November 6, 1987, should have been excluded. Additionally, appellant argues that on five separate occasions between the dates of August 10, 1987 and November 9, 1987 the intoxilyzer used on appellant produced results that were not within the + .005 range of variance.

R.C. 3701.143 authorizes the Director of Health to determine suitable methods of alcohol testing. Ohio Adm.Code 3701–53–04(A)(1), which is included in paragraph No. 3 of Official Instruction No. 009 issued on March 16, 1983, by the Director of Health for Alcohol Testing, provides that:

"(A) * * *

---

" * * *

"(3) The person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath."

"(1) A calibration check of a breath testing instrument is valid when the result of the calibration check is at target value *plus or minus* five one-thousandths (0.005) grams per two hundred ten liters.  \* \* \*" (Emphasis added)

Clearly, the variance indicated on the certificate for the calibration solution of + .005, rather than + or − .005, was a printing error which cannot be used by appellant to change the requirements of the law.  Since the calibration test results of November 2, 1987 and November 9, 1987, .105 and .104 respectively, were within the range of variance as provided for in Ohio Adm.Code 3701–53–04 and paragraph No. 3 of Official Instruction No. 009, the trial court did not err in denying appellant's motion to suppress the results of the intoxilyzer. Accordingly, appellant's first assignment of error is found not well-taken.

Appellant's second assignment of error claims that the trial court erred to the prejudice of appellant by failing to grant appellant's motion for acquittal. In his argument in support of this assignment of error, appellant argues that the state did not properly show that the intoxilyzer had been calibrated by a senior operator as required by Ohio Adm.Code 3701–53–04.  Specifically, appellant contends that, first, the calibrating officer did not testify and the arresting officer did not see the intoxilyzer calibrated, and second, the intoxilyzer test report form dated November 2, 1987, was not properly certified, did not show the senior operator's permit number and should not have been admitted into evidence.  Therefore, appellant contends, the state failed to show that the intoxilyzer had been properly calibrated.

█ Ohio Adm.Code 3701–53–04 requires that breath-testing instruments be checked by calibration no less frequently than once every seven days by a senior operator qualified under the terms of Ohio Adm.Code 3701–53–07.  In this case, although the calibrating officer, Chief Walter Bahnsen of the Port Clinton Police Department, did not testify, a senior operator's permit issued to him by the Director of Health was admitted into evidence.  This certificate, which authorizes the operation and the calibration of the intoxilyzer, was issued by the Ohio Department of Health, Alcohol Testing, Approval and Permit Program and bears the seal of the state of Ohio, Department of Health in the upper left corner.  It was issued for a two-year period on January 18, 1985, renewed for an additional two-year period on January 18, 1987, and was signed in the appropriate places by the Director of Health, the Chief of the Alcohol Testing Program, and an authorized representative of the Ohio Department of Health.  It is readily apparent that this certificate is a valid senior operator's permit issued to Chief Bahnsen and was properly admitted into evidence under Evid.R. 902(1) as a self-authenticating public document.

■ As to the intoxilyzer test report dated November 2, 1987, the signature of Chief Bahnsen appears above the line designated "Senior Operator's Signature," and the seal of the state of Ohio, Department of Health, appears in the upper-left corner. This form appears to be complete with the single exception of the omission of Chief Bahnsen's permit number above the line designated "Permit No." Since Chief Bahnsen's senior operator's permit, which displays the permit number was admitted into evidence, the inadvertent omission of that number from the test report form is neither prejudicial to appellant nor fatal to its admission into evidence.

Therefore, the intoxilyzer test report, being under seal, signed and dated and otherwise complete, is a self-authenticating public document and admissible under Evid.R. 902(1). Upon consideration of the above, the trial court did not abuse its discretion in admitting into evidence the intoxilyzer test report form dated November 2, 1987.

In addition to the calibrating officer's senior operator's permit and the intoxilyzer test report, the state offered the testimony of the arresting officer that he was familiar with the intoxilyzer calibration procedures at the Port Clinton Police Department and that to his knowledge Chief Bahnsen was responsible for the department's calibration testing.

■ Upon consideration of the evidence discussed under this assignment of error and appellant's first assignment of error, this court finds that the trial court properly found that the state produced sufficient evidence to show that the intoxilyzer had been calibrated in accordance with lawful requirements. Accordingly, appellant's second assignment of error is not well-taken.

■ In the third assignment of error, appellant argues that the trial court erred to the prejudice of the defendant in failing to allow the admission of appellant's separate blood test results.

R.C. 4511.19(B) provides, in pertinent part:

"In any criminal prosecution for a violation of this section * * * the court may admit evidence on the concentration of alcohol * * * in the defendant's blood, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance *withdrawn within two hours of the time of the alleged violation.*

" * * *

"The person tested may have a physician, a registered nurse, or a qualified technician or chemist of his own choosing administer a chemical test * * *." (Emphasis added.)

In this case, the trial court excluded the results of appellant's blood test because appellant failed to meet his burden of showing that the blood test was withdrawn within the required two-hour limitation or that it was analyzed in accordance with methods approved by the Director of Health.

A review of the record discloses conflicting testimony as to the time at which appellant's blood sample was withdrawn. The arresting officer testified that appellant was stopped at 11:07 p.m. and released in the vicinity of 12:30 a.m. One part of the hospital records that appellant attempted to introduce into evidence indicated that appellant arrived at the hospital at 12:40 a.m. and was discharged at 12:55 a.m., while another part showed that collection time for the blood sample was 1:42 a.m. Appellant's witness testified that the blood was withdrawn between 12:40 a.m. and 12:55 a.m. but when questioned about the part of the hospital record that listed the collection time as 1:42 a.m., the witness could not explain the discrepancy. Appellant's own testimony revealed that he "sat around for quite awhile" prior to the test. The record further reveals that another witness saw appellant walking home from the hospital somewhere around 2:00 a.m. In light of this inconsistency, it was properly within the trial court's discretion to find that appellant failed to meet his burden of showing that the blood sample was withdrawn within two hours of the time of the offense as required by R.C. 4511.19(B). Accordingly, appellant's third assignment of error is found not well-taken.

█ In the fourth assignment of error, appellant contends that the trial court erred to his prejudice by limiting appellant's expert testimony to the calibrations performed immediately before and immediately after the test date of November 6, 1987. Appellant attempted to enter into evidence a summary of all the calibration checks run on the Port Clinton Police Department's intoxilyzer during the entire year of 1987. The trial court excluded this evidence and any expert testimony pertaining to this summary based on relevancy. Specifically, the trial court concluded that the calibrations performed seven days before and seven days after the actual test date determine the parameters of an inquiry concerning malfunction of the machine and any evidence of malfunction falling outside the seven-day period was irrelevant. As discussed previously in this decision, Ohio Adm.Code 3701-53-04 requires that breath-testing instruments must be checked for calibration no less frequently than once every seven days by a senior operator. The record reveals that the intoxilyzer was calibrated by a senior operator on November 2, 1987, four days prior to appellant's test and again on November 9, 1987, three days after appellant's test. These calibration test results indicated that the intoxilyzer was functioning properly. Since the calibration checks before and after appellant's test were accurate, we cannot find that the trial court

abused its discretion in excluding evidence outside that calibration period. Accordingly, appellant's fourth assignment of error is found not well-taken.

■ Appellant's fifth assignment of error contends that the trial court erred to the prejudice of the defendant by instructing the jury that the actual accuracy of the intoxilyzer is determined only by calibration tests.

The trial court's instructions regarding the accuracy of the intoxilyzer were taken from the decision of the Supreme Court of Ohio in *State v. Schuck* (1986), 22 Ohio St.3d 296, at 297, 22 OBR 465, at 466, 490 N.E.2d 596, at 598:

"The actual accuracy of a given intoxilyzer is determined only by calibration checks. These checks are the truest measure of accuracy of a particular intoxilyzer at a particular time."

Immediately following this instruction the trial court continued to instruct the jury as follows:

"The weight to be given to the testimony and any exhibits presented regarding the accuracy of the test results obtained are questions for you to determine from all the facts and circumstances in evidence. You may give that test result such weight as in your judgment you deem it deserves."

In light of the preceding instruction, appellant's argument that the instruction quoted from *Schuck* places too much emphasis upon the calibrations and usurps the jury's discretion in weighing the evidence is without merit and, accordingly, appellant's fifth assignment of error is found not well-taken.

■ In the sixth assignment of error, appellant contends that the verdict of the jury is against the manifest weight of the evidence.

In examining such an assignment of error, a reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132.

In this case, in addition to the other facts discussed with assignments of error one through five, the record clearly shows that the arresting officer was the holder of a senior operator's permit, that he was qualified to perform the test on appellant, and that he did so in accordance with the requirements of the Department of Health. In addition, the record shows that the intoxilyzer was calibrated in compliance with Ohio Adm.Code 3701–53–04 and that the calibration test results indicated that the machine was functioning properly. Appellant's breath tested at .104 grams of alcohol per two hundred ten liters of breath, sufficient to show a prohibitive concentration of alcohol in violation of R.C. 4511.19(A)(3). Accordingly, appellant's sixth assignment of error is found not well-taken.

On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Port Clinton Municipal Court is affirmed and remanded for execution of sentence. It is ordered that appellant pay the costs of this appeal.

*Judgment affirmed.*

CONNORS and GLASSER, JJ., concur.