**The STATE of Ohio, Appellee,**

v.

**MEYERS, Appellant.**

[Cite as *State v. Meyers,* 146 Ohio App.3d 563, 2001–Ohio–2282.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–01–48.

Decided Sept. 28, 2001.

564

566

Anthony Geiger, City Prosecutor, and Vincent Duckworth, Assistant City Prosecutor, for appellee.

F. Stephen Chamberlain, for appellant.

WALTERS, Presiding Judge.

{¶ 1} Appellant, Paul D. Meyers, appeals a judgment of conviction and sentence entered by the Lima Municipal Court finding him guilty of operating a motor vehicle with a proscribed concentration of alcohol in his blood pursuant to R.C. 4511.19(A)(2). For the reasons expressed in the following opinion, we affirm the judgment of the trial court.

{¶ 2} The facts that are relevant to the issue raised on appeal are as follows. At 2:03 a.m. on October 2, 1998, Allen County Sheriff Deputy Brad Baty observed Paul D. Meyers, appellant, drive his motor vehicle into the path of another motor

vehicle at the intersection of Roush Road and State Route 81 in Allen County, Ohio. Deputy Baty summoned an emergency medical service ("EMS") provider to the scene. Meyers was transported by the EMS to the emergency room of St. Rita's Medical Center, Lima, Ohio, for treatment and diagnosis. Deputy Baty remained at the scene of the accident to complete his investigation before continuing on to St. Rita's between 2:33 and 2:48 a.m.

{¶ 3} While at St. Rita's, Meyers became combative and eventually was physically restrained by being strapped down to a gurney while wearing a neck brace. At 2:50 a.m. Meyers' blood was withdrawn by the hospital for medical treatment and diagnostic purposes. Meyers asserts that he requested an attorney before the procedure and denied consent to the blood withdrawal, citing religious reasons. Hospital records indicate that Meyers consented to the blood test but denied treatment. Conflicting testimony was submitted as to the use of an alcohol based swab by the hospital to cleanse and prepare Meyers' arm for the blood draw and Deputy Baty's assistance in the restraint of appellant and presence during the hospital's blood test.

{¶ 4} When Deputy Baty was permitted access to Meyers he advised Meyers that he was being cited for operating a motor vehicle while being under the influence of alcohol in violation of R.C. 4511.19(A)(1). At 3:20 a.m. Deputy Baty read appellant the Ohio Bureau of Motor Vehicle 2255 Implied Consent Form and requested that the appellant submit to a blood test. Appellant refused the test and requested the opportunity to speak with an attorney. Later that morning, Deputy Baty filed an R.C. 2317.02(B)(2) request with St. Rita's for the results of any blood tests conducted on appellant. The hospital produced the 2:50 a.m. test results, which indicated a blood-alcohol concentration of 0.16 of one percent by weight of alcohol. Thereafter, appellant was charged with having a proscribed blood-alcohol content in violation of R.C. 4511.19(A)(2).

{¶ 5} On February 1, 1999, appellant moved to suppress the results of the blood test, which was heard May 17, 1999. On February 23, 2000, the trial court overruled the motion. Appellant subsequently withdrew his not guilty plea and entered a plea of no contest to the R.C 4511.19(A)(2) charge. The state of Ohio dismissed the remaining charges, and appellant was convicted of and sentenced for the R.C. 4511.19(A)(2) violation. From this conviction and sentencing, this timely appeal followed.

{¶ 6} Appellant presents the following three assignments of error.

## Assignment of Error Number One

{¶ 7} "The trial court committed error prejudicial to the defendant-appellant in finding that the test results of the defendant's blood should not have been

suppressed since the blood sample was not drawn or tested in accordance with provisions of the Director of the Department of Health of the State of Ohio."

{¶ 8}  In his first assignment of error, appellant contends that the state failed to show that the blood sample was withdrawn in substantial compliance with standards promulgated by the Director of the Ohio Department of Health. Appellant therefore concludes that the evidence was inadmissible and should have been suppressed.

{¶ 9}  In a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses.[1]  When reviewing a trial court's ruling on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.[2]  An appellate court must independently determine, without deferring to the trial court's conclusions, whether, as a matter of law, the facts meet the applicable standard.[3]

{¶ 10}  Generally, in order for the results of an alcohol test to be admitted at trial, the prosecution must satisfy certain foundational requirements by showing the following:  (1) the bodily substance was withdrawn within two hours of the alleged violation;  (2) methods approved by the Director of the Ohio Department of Health ("ODH") guided the analysis;  and (3) a qualified individual conducted the analysis.[4]  However, the state herein has challenged the application of these foundational requirements where the alcohol test was conducted independently by a hospital for treatment and diagnostic purposes.  The state argues that R.C. 4511.19(D)(1) requires compliance only where the test was conducted at the request of a law enforcement officer.

{¶ 11}  Nothing in R.C. 4511.19 or 3701.143 expressly limits the application of 4511.19(D)(1) as the state suggests.  Instead, the state interprets R.C. 4511.19(D)(1) as though the third paragraph, requiring compliance with ODH mandates, is independent of the first paragraph and solely related to the second paragraph and its "at the request of a police officer" language.  R.C. 4511.19(D)(1) provides:

{¶ 12}  "In any criminal prosecution * * * for a violation of this section * * * the court may admit evidence on the concentration of alcohol * * * in the

1.  *State v. Robinson* (1994), 98 Ohio App.3d 560, 570, 649 N.E.2d 18.

2.  *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726.

3.  *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141.

4.  *State v. Young* (1993), 88 Ohio App.3d 486, 490, 624 N.E.2d 314.

defendant's blood, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance withdrawn within two hours of the time of the alleged violation.

{¶ 13}  "When a person submits to a blood test at the request of a police officer under section 4511.191 of the Revised Code, only a physician, a registered nurse, or a qualified technician or chemist shall withdrawal blood for the purpose of determining its alcohol, drug, or alcohol and drug content.  This limitation does not apply to the taking of breath or urine specimens.  * * *

{¶ 14}  "Such bodily substance shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director of health pursuant to section 3701.143 of the Revised Code."

{¶ 15}  Further, R.C. 3701.143 provides:

{¶ 16}  "For purposes of section 4511.19 of the Revised Code, the director of health shall determine, or cause to be determined, techniques or methods for chemically analyzing a person's blood, urine, breath, or other bodily substance in order to ascertain the amount of alcohol, a drug of abuse, or alcohol and a drug of abuse in the person's blood, urine, breath, or other bodily substance.  The director shall approve satisfactory techniques or methods, ascertain the qualifications of individuals to conduct such analyses, and issue permits to qualified persons authorizing them to perform such analyses.  Such permits shall be subject to termination or revocation at the discretion of the director."

{¶ 17}  The Ohio Supreme Court has emphasized that "[i]t is well established that in a charge of violating R.C. 4511.19(A)(2) through (4) '[t]he accuracy of the test results is a critical issue in determining a defendant's guilt or innocence.' "[5] And that "[t]he admissibility of test results to establish alcoholic concentration under R.C. 4511.19 turns on substantial compliance with ODH regulations."[6]  In *State v. Ripple*,[7] the Ohio Supreme Court discussed the use of chemical tests in R.C. 4511.19 prosecutions, stating:

{¶ 18}  "In our view, the language of R.C. 4511.19(D) is clear, unmistakable and, above all, mandatory.  * * * While other evidence of drug use may be admitted in a prosecution brought under R.C. 4511.19, it is clear that the General

---

5.  *State v. French* (1995), 72 Ohio St.3d 446, 451, 650 N.E.2d 887, citing *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 3, 573 N.E.2d 32.

6.  *Kretz*, 60 Ohio St.3d at 3, 573 N.E.2d 32 (citations omitted).

7.  *State v. Ripple* (1994), 70 Ohio St.3d 86, 89, 637 N.E.2d 304.

Assembly has foreclosed the use of chemical drug analysis of bodily substances, unless and until the Director of Health approves such a method.

{¶ 19} "Therefore, we hold that absent approval of methods by the Director of Health pertaining to the testing of bodily substances for drugs, a chemical analysis purporting to indicate the presence of drugs in an accused is inadmissible in a prosecution brought pursuant to R.C. 4511.19."

{¶ 20} The *Ripple* court unequivocally indicated that the Revised Code requires the promulgation of standards by the Director of Health, and makes compliance with those standards a condition precedent for the admission into evidence of drug or alcohol testing conducted for the purposes of establishing intoxication in prosecutions for driving under the influence.[8] Furthermore, our research indicates that, without significant discussion, courts have generally required that independent bodily substance tests comply with the ODH mandates and other R.C. 4511.19(D)(1) provisions.[9] Therefore, we find that application of ODH standards to the state's use of privately drawn bodily substance tests in R.C. 4511.19(A)(2) through (4) prohibited concentration violations logically follows from the language, purpose, and case law construing these statutory provisions. Thus, we proceed to determine whether the state has met its burden in this instance.

{¶ 21} In general, when faced with a challenge to the admissibility of a blood test on the grounds that the state failed to comply with its regulations, the state must show substantial compliance, rather than strict compliance, with ODH regulations.[10] On a pretrial motion to suppress the results of a blood-alcohol test, the state has the burden of proving substantial compliance with the ODH regulations.[11] The prosecution bears this burden, however, only to the extent that the defendant takes issue with the legality of the test.[12] Absent a showing of prejudice to a defendant, the results of a blood-alcohol test administered in

---

8. *Ripple*, supra.

9. See *State v. Rains* (1999), 135 Ohio App.3d 547, 735 N.E.2d 1, dismissed and appeal not allowed in (1999), 85 Ohio St.3d 1496, 710 N.E.2d 716; *State v. Eyrich* (July 22, 1998), Monroe App. No. 794, 1998 WL 473334; *State v. App* (June 30, 1997), Butler App. No. CA96–06–113, 1997 WL 370576; *State v. Wolfrum* (June 27, 1997), Fulton App. No. F–96–035, 1997 WL 362472; *State v. Farris* (1989), 62 Ohio App.3d 189, 194–195, 574 N.E.2d 1168.

10. *State v. Mays* (1992), 83 Ohio App.3d 610, 613, 615 N.E.2d 641; *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 3, 573 N.E.2d 32.

11. *State v. Plummer* (1986), 22 Ohio St.3d 292, 294, 22 OBR 461, 490 N.E.2d 902.

12. *State v. French* (1995), 72 Ohio St.3d 446, 650 N.E.2d 887, paragraph one of the syllabus.

substantial compliance with Ohio Administrative Code regulations are admissible in a prosecution under R.C. 4511.19.[13]

{¶ 22}  In the instant case, appellant asserts that the state failed to show substantial compliance with Ohio Adm.Code 3701–53–05, which provides:

{¶ 23}  "(A) All samples shall be collected in accordance with division (D) of section 4511.19 or division (B) of section 1547.11 of the Revised Code, as applicable.

{¶ 24}  "(B) When collecting a blood sample, an aqueous solution of a non-volatile antiseptic shall be used on the skin.  No alcohols shall be used as a skin antiseptic."

{¶ 25}  Appellant contends that the hospital used an alcohol-based swab to prep his arm for the blood draw in violation of subsection (B), negating any potential finding of substantial compliance.  Appellant conceded through stipulation that the hospital literally complied with the remaining requirements of the regulations.

{¶ 26}  At the suppression hearing the state submitted a stipulated copy of the hospital's general procedure manual requiring the use of non-alcohol swabs for the cleansing of skin in all blood draws.  Hospital records were introduced indicating that Meyers consented to the blood test but denied treatment.  In addition, the state called Christine Conley, an assisting nurse on the evening in question, to testify as to the blood-draw procedures employed upon the appellant.  Nurse Conley testified that, although she could not entirely identify the appellant from the circumstances of her limited contact with him, she had cleansed appellant's arm in preparation for the blood withdrawal and that she always used alcohol-free iodine capsules.  Nurse Conley also explained the use and presence of alcohol swabs in the emergency room, indicating that such swabs were generally used only for cleaning I.V. tubing cords used for administering medication and could have been lying around from the treatment of previous patients or from EMS personnel.  Though appellant gave conflicting testimony, the trial court found that his recollection of the evening's events and his allegations were simply not credible.  Witness credibility is a matter reserved to and well within the trial court's discretion.

{¶ 27}  Upon review of the entire record, we find that there was sufficient competent and credible evidence before the trial court to demonstrate substantial compliance with the ODH regulations.

{¶ 28}  Accordingly, appellant's first assignment of error is overruled.

---

13.  Id. at paragraph one of the syllabus.

## Assignment of Error Number Two

{¶ 29} "The trial court committed error prejudicial to the defendant by holding that the defendant's blood sample and test results should not have been suppressed due to the fact that the defendant was not allowed access to or to consult with an attorney."

{¶ 30} In his second assignment of error, appellant asserts that his constitutional rights were violated when the hospital administered the blood test without providing access to or allowing the presence of counsel. Appellant again concludes that the evidence was inadmissible and should have been suppressed.

{¶ 31} "The [Fifth Amendment] right to counsel, requested or not, attaches only when a suspect is in custody."[14] In *McNeil v. Wisconsin*,[15] at footnote 3, the United States Supreme Court noted in dicta that the court had never held that a person could invoke his *Miranda* right to counsel anticipatorily, in a context other than custodial interrogation. Federal courts have cited the *McNeil* footnote in holding that a defendant may not invoke his right to counsel under *Miranda* in the absence of both interrogation and custody.[16] In *United States v. Wright*[17] the Ninth Circuit noted that the *McNeil* footnote strongly suggests that the *Miranda* rights may not be invoked in advance, outside the custodial context.

{¶ 32} The Supreme Court of the United States has ruled that if a suspect is under custodial interrogation and is undergoing "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way * * *,"[18] and the suspect "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning."[19] Detention and questioning by a private individual or entity do not amount to state custody or

---

14. *State v. Fry* (1988), 61 Ohio App.3d 689, 573 N.E.2d 1108, citing *State v. Sadler* (1987), 85 Ore.App. 134, 137, 735 P.2d 1267, 1269; *Minnesota v. Murphy* (1984), 465 U.S. 420, 424, 104 S.Ct. 1136, 79 L.Ed.2d 409, at fn. 3; *State v. Johnson* (Nov. 5, 1999), Licking App. N. 99–CA–26, unreported, 1999 WL 1071686, dismissed, appeal not allowed by *State v. Johnson* (2000), 88 Ohio St.3d 1433, 724 N.E.2d 809.

15. *McNeil v. Wisconsin* (1991), 501 U.S. 171, 182, 111 S.Ct. 2204, 115 L.Ed.2d 158, at fn. 3.

16. *United States v. Barnett* (Alaska 1992), 814 F.Supp. 1449, 1454; *Alston v. Redman* (C.A.3, 1994), 34 F.3d 1237, 1248, certiorari denied (1995), 513 U.S. 1160, 115 S.Ct. 1122, 130 L.Ed.2d 1085.

17. *United States v. Wright* (C.A.9, 1992), 962 F.2d 953, 955.

18. *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694.

19. Id. at 444–445, 86 S.Ct. 1602, 16 L.Ed.2d 694.

interrogation implicating either the Fourth Amendment protections or the Fifth Amendment right to counsel.

{¶ 33} Other than appellant's assertion that the officer assisted in restraining the patient, there is no indication that appellant was either in custody or subject to interrogation by the investigating officer. Conversely, the officer's testimony indicated that the appellant had already been secured in restraints by the hospital staff when he arrived and that the officer did not arrest, request a blood test from, or have access to the appellant until after the hospital's blood test had been administered. Essentially, this amounts to a credibility determination primarily reserved to and well within the trial court's discretion.

{¶ 34} We find that there is sufficient evidence that appellant was under the sole care and supervision of the hospital at the time the blood test was administered. Moreover, as discussed in appellant's third assignment of error, the record does not support the contention that the conduct of either the EMS or the hospital could be attributed to the state. Therefore, consideration of the factual evidence reveals a competent, credible basis for the trial court's determination. Without the prerequisite custody and interrogation, appellant's Fifth Amendment right to counsel had not been implicated.

{¶ 35} Accordingly, appellant's second assignment of error is overruled.

### Assignment of Error Number Three

{¶ 36} "The trial court committed error prejudicial to the defendant by holding that the use of the blood sample and tests of that sample were admissible as evidence against the defendant where the blood sample was taken without the consent of the defendant."

{¶ 37} In his third assignment of error, appellant argues that the trial court erred in permitting the introduction of a hospital-administered blood-alcohol test allegedly taken without his consent. The blood test was requested and obtained by the state pursuant to R.C. 2317.02(B)(2).

{¶ 38} Appellant essentially asserts that his Fourth Amendment rights were violated by the removal of his blood without his consent. Appellant further contends that the state should not be able to employ R.C. 2317.02(B)(2) to do an "end run" around these rights in order to obtain evidence. The crux of this argument is that the blood sample should be suppressed as the fruit of an illegal search and seizure. We do not agree.

{¶ 39} In support of his proposition, appellant cites the factually analogous case of *N. Olmsted v. Gareau.*[20] However, *Gareau* relied upon the physician-

---

20. *N. Olmsted v. Gareau* (June 6, 1991), Cuyahoga App. No. 60815, 1991 WL 97383.

patient privilege and the Ohio Supreme Court's holding in *State v. Smorgala,*[21] which applied the previous version of R.C. 2317.02(B)(1)(b). In 1993, the General Assembly abrogated the physician-patient privilege in the context of criminal investigations, expressly superseding *Smorgala.*[22] Pursuant to the current version of R.C. 2317.02(B)(1)(b), physicians may be compelled to testify as to the results of such tests.[23] Further, R.C. 2317.02(B)(2)(a) excluded related records from the privilege, allowing law enforcement officials to request and receive a defendant's test results in criminal actions.

{¶ 40} Appellant further cites *Leach v. Shapiro*[24] for the proposition that he had an unqualified right to refuse treatment by St. Rita's staff, including the drawing of blood for any reason. However, *Leach* is factually distinguishable and inapplicable to our Fourth Amendment analysis, essentially providing that a person has a qualified right to refuse treatment and that a physician commits a battery, fraud, and malpractice when he treats a person without informed consent.[25]

{¶ 41} The Fourth Amendment to the United States Constitution, applicable to the states by way of the Fourteenth Amendment, provides for "[t]he right of the people to be secure * * * against unreasonable searches and seizures[.]" If evidence is obtained through actions that violate an accused's Fourth Amendment rights, exclusion of the evidence at trial is mandated.[26] However, the constitutional proscriptions of the Fourth Amendment and the exclusionary rule apply only to government action and not to the actions of private persons.[27] Evidence discovered and seized by private persons is admissible in a criminal prosecution regardless of whether such evidence was obtained by legal or illegal methods, so long as there is no government participation in the search.[28]

21. Id., citing *State v. Smorgala* (1990), 50 Ohio St.3d 222, 553 N.E.2d 672.

22. See, Am.S.B. No. 121, as passed by the 120th General Assembly, effective October 29, 1993.

23. *Middletown v. Newton* (1998), 125 Ohio App.3d 540, 544–545, 708 N.E.2d 1086.

24. *Leach v. Shapiro* (1984), 13 Ohio App.3d 393, 13 OBR 477, 469 N.E.2d 1047.

25. Id. at syllabus.

26. *Mapp v. Ohio* (1961), 367 U.S. 643, 657, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

27. *State v. Chung* (Feb. 19, 1999), Montgomery App. No. 17154, 1999 WL 76945; *State v. Morris* (1975), 42 Ohio St.2d 307, 316, 71 O.O.2d 294, 329 N.E.2d 85; *Burdeau v. McDowell* (1921), 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048.

28. *State v. Hegbar* (Dec. 5, 1985), Cuyahoga App. No. 49828, 1985 WL 4219, citing *Burdeau,* 256 U.S. at 475, 41 S.Ct. 574, 65 L.Ed. 1048.

{¶ 42} The threshold issue is whether the conduct of the hospital constituted state action. Essentially, appellant sets forth two arguments for state action. First, appellant contends that R.C. 2317.02(B)(2)(a) makes the hospital a state actor by compelling hospitals and physicians to provide evidence to law enforcement despite objection of a defendant. Second, appellant asserts that the officer was sufficiently involved in the events at the hospital to attribute the hospital's activities to the state.

{¶ 43} There is no bright-line test for determining whether the conduct of a private entity constitutes state action.[29] Instead, the United States Supreme Court has applied a variety of state-action tests and cautioned courts to examine scrupulously the facts and circumstances of each individual case.[30]

{¶ 44} The "sovereign-function" test focuses on whether the state delegated to the private entity a power or prerogative "traditionally exclusively reserved to the State."[31] "[O]nly those undertakings that are uniquely sovereign in character qualify as traditional and exclusive state functions."[32] The mere fact that "a private entity performs a function which serves the public does not make its acts state action."[33]

{¶ 45} The "compulsion" test looks to whether the state exercised such coercive power over or provided such significant encouragement to the private actor, either overtly or covertly, that the private actor's decisions must be deemed to be that of the state.[34] Mere acquiescence to or approval of the initiatives of a private actor is insufficient to attribute the actor's conduct to the state.[35] "The state must use its power over the private actor to control or direct the private actor's conduct."[36]

---

**29.** *Moose Lodge No. 107 v. Irvis* (1972), 407 U.S. 163, 172, 92 S.Ct. 1965, 32 L.Ed.2d 627.

**30.** *Burton v. Wilmington Parking Auth.* (1961), 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45; *Krynicky v. Univ. of Pittsburgh* (C.A.3, 1984), 742 F.2d 94, 98.

**31.** *Flagg Bros., Inc. v. Brooks* (1978), 436 U.S. 149, 157, 98 S.Ct. 1729, 56 L.Ed.2d 185; see *Rendell–Baker v. Kohn* (1982), 457 U.S. 830, 842, 102 S.Ct. 2764, 73 L.Ed.2d 418.

**32.** *United Auto Workers, Local No. 5285 v. Gaston Festivals, Inc.* (C.A.4, 1995), 43 F.3d 902, 907.

**33.** *San Francisco Arts & Athletics, Inc. v. United States Olympic Commt.* (1987), 483 U.S. 522, 544, 107 S.Ct. 2971, 97 L.Ed.2d 427.

**34.** *Blum v. Yaretsky* (1982), 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534.

**35.** Id.

**36.** *Peoples Rights Org., Inc. v. Montgomery* (2001), 142 Ohio App.3d 443, 756 N.E.2d 127, dismissed and appeal not allowed in (2001), 93 Ohio St.3d 1410, 754 N.E.2d 258.

{¶ 46}   Under the "symbiotic relationship" or "nexus" test, a private entity's conduct constitutes state action when "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the * * * latter may be fairly treated as that of the State itself." [37]   A symbiotic relationship exists where the state "affirmatively support[s] and be[comes] directly involved in the specific conduct which is being challenged." [38]   However, " '[t]he mere fact that a business is subject to regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.' " [39] Without a sufficient nexus, even significantly funded [40] or heavily regulated private entities are not actors under color of state law.[41]

{¶ 47}   R.C. 2317.02 states:

{¶ 48}   "(B) * * *

{¶ 49}   "The testimonial privilege [physician/patient] under this division does not apply, and a physician or dentist may testify or may be compelled to testify in any of the following circumstances:

{¶ 50}   "* * *

{¶ 51}   "(b) In any criminal action concerning any test or the results of any test that determines the presence or concentration of alcohol, a drug of abuse, or alcohol and a drug of abuse in the patient's blood, breath, urine, or other bodily substance at any time relevant to the criminal offense in question."

{¶ 52}   The statute further states that, upon request, the "provider, except to the extent specifically prohibited by any law of this state or of the United States, shall supply to the officer a copy of any of the requested records the provider possesses." [42]   The clear intent of the legislature was to abrogate the physician-patient privilege and provide the state access to blood-alcohol tests in criminal cases.

---

**37.**   *Am. Mfrs. Mut. Ins. Co. v. Sullivan* (1999), 526 U.S. 40, 52, 119 S.Ct. 977, 143 L.Ed.2d 130, citing *Blum*, 457 U.S. at 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534.

**38.**   *Cannon v. Univ. of Chicago* (C.A.7, 1977), 559 F.2d 1063, 1069.   See, also, *Wolotsky v. Huhn* (C.A.6, 1992), 960 F.2d 1331, 1335.

**39.**   *Sullivan*, 526 U.S. at 52, 119 S.Ct. 977, 143 L.Ed.2d 130, quoting *Jackson v. Metro. Edison Co.* (1974), 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.Ed.2d 477.

**40.**   *Cannon v. Univ. of Chicago* (C.A.7, 1977), 559 F.2d 1063, 1069, reversed on other grounds (1979), 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560.

**41.**   *Jackson*, 419 U.S. at 351, 95 S.Ct. 449, 42 L.Ed.2d 477.

**42.**   R.C. 2317.02(B)(2)(a).

{¶ 53} Examining the statute in the context of the enumerated state-action tests, it is apparent that blood testing in the course of independent medical treatment and diagnostic care is not a traditionally exclusive state function that has been delegated to health care providers. There is no evidence of ownership of or a symbiotic relationship or nexus between the state and private actors: the state does not "affirmatively support" and is not directly involved in the specific conduct that is being challenged. Moreover, the statute does not penalize the hospital, encourage testing, or direct the manner in which tests are conducted so as to control the hospital's conduct. R.C. 2317.02(B)(2)(a) merely provides a discovery tool through which the state may request and receive the medical records described herein. To hold that every statute providing the state with a discovery tool creates state action would be inconsistent with the identified scope of Fourth Amendment protections and would severely cripple law enforcement efforts. Hence, we do not find that R.C. 2317.02(B)(2)(a) creates inherent state action.

{¶ 54} Turning to Deputy Baty's conduct in the present case, the record does not support appellant's contention that the hospital was acting with the officer's assistance or at the officer's request. Rather, as discussed in appellant's second assignment of error, the record shows that the test was performed by hospital personnel for treatment and diagnostic purposes prior to the officer's arrival and appellant's arrest. Therefore, regardless of whether appellant refused to consent to the test, the hospital's blood test did not constitute state action necessary to implicate Fourth Amendment protections. Accordingly, appellant's third assignment of error is overruled.

{¶ 55} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

SHAW and THOMAS F. BRYANT, JJ., concur.