DECISION.
{¶ 1} Defendant-appellant, Kevin Stallings, appeals the judgment of the Hamilton County Court of Common Pleas convicting him of receiving stolen property in violation of R.C. 2913.51. He was convicted of the offense after entering a plea of no contest. For the following reasons, we affirm the trial court's judgment.
 {¶ 2} Stallings was indicted for receiving stolen property, a felony of the fifth degree, in 2002. He filed a motion to suppress evidence on the grounds that the police did not have a reasonable suspicion to detain him and did not have probable cause to seize the stolen credit card that was the subject of the charge.
 {¶ 3} At the hearing on the motion, Forest Park Police Officer Patrick Carr testified that he and fellow officers had executed a search warrant at the apartment of Stallings's brother. They sought evidence that Stallings's brother had been involved in a recent string of credit-card thefts.
 {¶ 4} While on the premises, the officers learned that Kevin Stallings sometimes stayed at the apartment in a spare bedroom. In searching the bedroom where Stallings periodically stayed, the officers found a notebook containing names, addresses, and credit-card numbers for a large number of people across the United States. In the same room, they also found a photograph of Stallings standing next to a 1994 Chevrolet Suburban.
 {¶ 5} As the officers were completing the execution of the search warrant, they observed entering the apartment complex's parking lot a Chevrolet Suburban matching the one in the photograph. Officer Carr stopped the vehicle and began to question the driver, who identified himself as Kevin Stallings. During questioning, Carr asked Stallings if he could see his identification. According to Carr's testimony, Stallings produced a driver's license from his wallet, and while he was doing so, Carr saw a credit card in the wallet. After Stallings had closed the wallet, Carr asked who owned the credit card. Stallings then denied the existence of the credit card.
 {¶ 6} Upon hearing Stallings's denial of the existence of the credit card, Carr seized the wallet. Carr saw that the credit card had been issued to Cynthia Johnson, and he again questioned Stallings about his possession of the card. Carr testified that Stallings denied owning the credit card and stated that he did not know how it had come into his possession. Carr then handcuffed Stallings and performed a search of the Suburban. He subsequently released Stallings but kept the credit card for further investigation.
 {¶ 7} At the close of all the evidence at the suppression hearing, the trial court overruled Stallings's motion. Stallings later entered a no-contest plea and was sentenced to community control.
 {¶ 8} In a single assignment of error, Stallings now argues that the trial court erred in overruling his motion to suppress. He argues that Carr did not have a reasonable suspicion to detain him for questioning and that there was no applicable exception to the warrant requirement with respect to the seizure of the credit card. We find no merit in the assignment.
 {¶ 9} An investigatory stop or detention of a person is lawful under the Fourth Amendment to the United States Constitution and under Section 14, Article I of the Ohio Constitution, where an officer has a reasonable, articulable suspicion that a person is engaging or has recently engaged in criminal activity.[1] The propriety of an investigative stop must be determined in light of all the surrounding circumstances.[2]
 {¶ 10} Here, Officer Carr possessed a reasonable suspicion that Stallings was engaged in criminal activity. Carr had retrieved a notebook containing numerous credit-card numbers from the room in which Stallings stayed. He had seen the photograph of Stallings standing next to the Suburban and therefore recognized Stallings's vehicle when it pulled into the parking lot. The fact that Stallings was apparently returning to the residence where the notebook had been recovered justified Carr's decision to question Stallings about his possible involvement in credit-card thefts.
 {¶ 11} Stallings argues, though, that even if the initial detention had been justified, there was no justification for the seizure of the wallet. The state responds that Stallings's denial that he possessed a credit card — in conjunction with the other facts surrounding the investigation — provided probable cause for an arrest and that the seizure of the card was valid as a product of a search incident to that arrest.
 {¶ 12} Warrantless searches are "per se unreasonable under theFourth Amendment subject only to a few specifically established and well-delineated exceptions."[3] One such exception is that the police may conduct a warrantless search incident to a lawful arrest.[4] If the arrest is unlawful, as where the police do not possess probable cause to make the arrest, the search is also unlawful.[5] "Probable cause" has been defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."[6]
 {¶ 13} In the case at bar, we hold that Carr had sufficient knowledge to justify his arrest of Stallings. Carr had seen the large list of credit-card numbers in the room in which Stallings sometimes stayed. When Carr then saw a credit card in Stallings's wallet, it was reasonable for him to inquire about who owned it. When Stallings denied having a credit card after Carr had clearly seen it in his wallet, Carr had probable cause to believe that it was stolen. And while Stallings notes that he was not obligated to answer the officer's question about the card, his choice to lie to the officer was a strong indication that the card was stolen, and a prudent police officer would have believed that Stallings was committing an offense. The arrest was therefore valid, as was the seizure of the credit card.
 {¶ 14} We note that although Carr released Stallings after having performed the search of the Suburban, it is evident from the record that Stallings had been placed under arrest. The Ohio Supreme Court has formulated an objective test to determine whether an arrest has occurred. There must be an intent to arrest, under real or pretended authority, accompanied by some actual or constructive seizure or detention of the person, which is so understood by the person arrested.[7] Here, Carr had handcuffed Stallings for a period of time sufficient to complete the search of the Suburban, or approximately forty-five minutes, and Stallings stated that he did not feel free to leave. Under these circumstances, we hold that an arrest had occurred and that Carr was permitted to search Stallings as an incident to the arrest. The assignment of error is accordingly overruled, and the trial court's judgment is affirmed.
Judgment affirmed.
Winkler, J., concurs.
Painter, J., dissents.
[1] Terry v. Ohio (1968), 392 U.S. 1, 21-22, 88 S.Ct. 1868; State v.Williams (1990), 51 Ohio St.3d 58, 60-61, 554 N.E.2d 108.
[2] State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus.
[3] State v. Kessler (1978), 53 Ohio St.2d 204, 207, 373 N.E.2d 1252, quoting Coolidge v. New Hampshire (1971), 403 U.S. 443, 454-455,91 S.Ct. 2022.
[4] See State v. Johnson (Feb. 25, 2000), 1st Dist. No. C-990042.
[5] Id.
[6] Michigan v. DeFillippo (1979), 443 U.S. 31, 37,99 S.Ct. 2627.
[7] State v. Darrah (1980), 64 Ohio St.2d 22, 26, 412 N.E.2d 1328.