DECISION *Page 2 
{¶ 1} Defendant-appellant, Rico Hughes, appeals convictions for four counts of receiving stolen property under R.C. 2913.51 and one count of possession of cocaine under R.C. 2925.11(A). In his two assignments of error, he contends that the trial court erred in overruling his motion to suppress. While we do not agree with all of the trial court's reasoning, we affirm the court's judgment.
 I. Facts and Procedure {¶ 2} Evidence at the hearing on the motion to suppress showed that, in April 2007, Paul Phillips was working as a police officer for the Health Alliance Department of Public Safety at Jewish Hospital. Although he was commissioned as a police officer, his position was funded by the Health Alliance, a conglomerate of several hospitals, and he had no connection to any government agency.
 {¶ 3} Phillips had received a complaint that an individual was lying on a couch in the hospital lobby with his shoes off, eating a sandwich. Phillips found Hughes in the lobby and asked him why he was on the hospital's property. Hughes told him that he just wanted to sit there and eat. Hughes became argumentative because he thought that Phillips was accusing him of stealing the sandwich.
 {¶ 4} Phillips began escorting Hughes back to his office to give Hughes a written warning not to trespass on hospital grounds. While they were on the way, a hospital employee told Phillips that Hughes had been panhandling in the lobby. Because the hospital prohibited panhandling and soliciting on hospital grounds, Phillip decided to arrest Hughes for criminal trespassing. *Page 3 
 {¶ 5} Phillips placed Hughes in handcuffs, advised him of hisMiranda rights, [1] and began a search of Hughes's person. He found a plastic baggie containing cocaine and drivers' licenses and credit cards with other people's names on them. Some of the credit cards belonged to an employee of the Veterans Administration who had reported her purse stolen.
 {¶ 6} The trial court overruled Hughes's motion to suppress, holding that no state action had occurred, and that the search of Hughes's person had been a valid search incident to his arrest. Subsequently, Hughes pleaded no contest to all the charges and was properly sentenced. This appeal followed.
 II. State Action {¶ 7} Hughes presents two assignments of error for review. In his first assignment of error, he states that the trial court erred in overruling his motion to suppress on the ground that no state action had occurred. He argues that Phillips was a state actor because he was a commissioned police officer who carried a badge and had the power to make arrests. While we agree with the argument that Phillips was a state actor, we cannot hold that the trial court erred in overruling the motion to suppress.
 {¶ 8} Appellate review of a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact as true if competent, credible evidence supports them. But we must independently determine whether the facts satisfy the applicable legal standard.[2] *Page 4 
 {¶ 9} The Fourth Amendment, applicable to the states by way of the Fourteenth Amendment, prohibits unreasonable searches and seizures.[3]
But this prohibition applies only to government action and not to the actions of private individuals.[4] Evidence discovered and seized by private persons is admissible in a criminal prosecution even if those private persons obtained it illegally, as long as the government did not participate in the search.[5]
 {¶ 10} But if a sufficiently close nexus between the state and the challenged action of the private entity exists, the action "may be fairly treated as that of the State itself."[6] The United States Supreme Court has set forth three tests for determining the existence of state action in a particular case, only one of which applies here.[7]
Under the "public function" test, a private entity may be deemed a state actor if it performs functions that are traditionally reserved exclusively to the state.[8]
 {¶ 11} The Supreme Court has explicitly declined to decide the question "whether and under what circumstances private police officers may be said to perform a public function[.]"[9] In this appeal, the state cites numerous cases holding that evidence obtained by private security guards is admissible in evidence.[10] Those cases have reasoned that private security guards have no special state authority, have no formal state affiliation, or are not acting at the discretion of or controlled by a government *Page 5 
agency. The primary function of privately employed security guards is the protection of their employers' property, rather than law enforcement.[11] But we see a fundamental difference between private security guards, who have no formal police powers, and private police officers commissioned by the state.
 {¶ 12} Phillips was commissioned under R.C. 4973.17. Section (D)(1) of the statute provides that "[u]pon the application of any hospital that is operated by a public hospital agency or a nonprofit hospital agency and that employs and maintains its own proprietary police department or security department * * *, the secretary of state may appoint and commission any persons that the hospital designates, or as many of those persons as the secretary of state considers proper, to act as police officers for the hospital." The statute then sets forth certain conditions that apply, including a requirement that a person appointed as a police officer must have successfully completed a training program approved by the Ohio Peace Officer Training Commission.[12]
 {¶ 13} A person appointed under the statute "is entitled to act as a police officer for the hospital on the premises of the hospital and of its affiliates and subsidiaries" with proper approval while "in the discharge of the person's duties as a police officer for the hospital."[13] R.C. 4973.18 further provides that police officers appointed under R.C. 4973.17 "shall severally possess and exercise the powers of, and be subject to the liabilities of, municipal policemen while discharging the duties for which they are appointed." *Page 6 
 {¶ 14} Interpreting previous versions of these statutes, the Ohio Supreme Court has held that duly commissioned law enforcement officers who are hired by private entities are public officers deriving their authority from the sovereign. Their acts are presumed to have been performed in their official capacity absent evidence to the contrary.[14]
 {¶ 15} One appellate court has stated that a bank-fraud investigator commissioned under R.C. 4973.17 was a "law enforcement officer" within the meaning of Crim. R. 41. It noted that R.C. 4973.18 conferred "all the powers of a municipal police officer" on the investigator so long as she was discharging her duties as a bank-fraud investigator.[15]
 {¶ 16} Interpreting a Michigan statute similar to R.C. 4973.17, a federal court has held that private security officers who were licensed under that statute and had "virtually the same power as public police officers" were state actors. In Romanski v. Detroit Entertainment,LLC, [16] the court distinguished between "cases in which a private actor exercises a power traditionally reserved to the state, but not exclusively reserved to it, e.g., the common[-]law shopkeeper's privilege, from cases in which a private actor exercises a power exclusively reserved to the state, e.g., the police power."[17]
 {¶ 17} Thus, "[w]here private security officers are endowed with plenary police powers such that they are de facto police officers, they may qualify as state *Page 7 
actors under the public function test."[18] The court went on to hold that because the private security officer in that case had authority to make arrests at his own discretion and for any offenses, he was a state actor.[19]
 {¶ 18} A federal district court relied on Romanski in holding that private security officers for an amusement park appointed under R.C. 4973.17(E) could be state actors.[20] It stated that one of the officers had testified that he had authority to detain, arrest, or eject individuals from the park and to file criminal complaints when crimes were committed. He did not indicate that his power to arrest or detain individuals was limited to certain offenses. Instead, he described a broad power that could be exercised throughout park property. Thus, the court held, "[s]uch power is closely analogous to the power granted to the security officers in Romanski."
 {¶ 19} In this case, Phillips had plenary police power under R.C. 4973.17. He testified that he had received a certificate of training from the Ohio peace officer training program. He stated that his commission was through the governor's office and the state of Ohio, and that he had authority to make arrests. When he approached Hughes, he was wearing a badge and identified himself as a police officer. He stated that Hughes had not been free to leave when he detained him. He placed Hughes in handcuffs and read him his Miranda rights. Thus, in this case, as in Romanski, Phillips was a de facto police officer and, therefore, a state actor.
 {¶ 20} Consequently, we hold that the trial court erred in finding that no state action existed. But because we hold in response to Hughes's second assignment of error that Phillips's search of Hughes's person did not violate the Fourth *Page 8 
Amendment, we cannot hold that the trial court erred in overruling Hughes's motion to suppress. Therefore, we overrule his first assignment of error.
 III. Search Incident to Arrest {¶ 21} In his second assignment of error, Hughes contends that the trial court erred in overruling his motion to suppress on the ground that the search had been a valid search incident to his arrest. He argues that Phillips did not have probable cause to arrest him. This assignment of error is not well taken.
 {¶ 22} Warrantless searches are unreasonable under the Fourth Amendment except for a few well-delineated exceptions.[21] One such exception is a search incident to a lawful arrest.[22] If the arrest is unlawful, as where the police do not have probable cause to arrest, then the search is also unlawful.[23] In determining whether police had probable cause to arrest, a court must ascertain whether, at the time of the arrest, the police officers had sufficient facts and circumstances within their knowledge to warrant a prudent person in believing that the defendant was committing or had committed an offense.[24]
 {¶ 23} In this case, the initial complaint about Hughes was that he was lying on a couch in the hospital lounge with his shoes off, eating a sandwich. Phillips confronted Hughes, who became argumentative. Subsequently, a hospital employee told Phillips that Hughes had been panhandling. The hospital had a strict "no panhandling" policy, and Hughes's violation of that policy meant that he was trespassing. *Page 9 
 {¶ 24} Thus, Phillips had sufficient facts and circumstances within his knowledge to warrant a prudent person in believing that Hughes was committing the offense of trespassing. Therefore, Phillips had probable cause to arrest him.
 {¶ 25} Because the arrest was lawful, the subsequent search of Hughes's person was a valid search incident to that arrest.[25]
Consequently, we overrule Hughes's second assignment of error and affirm his convictions.
Judgment affirmed.
SUNDERMANN, P.J., and PAINTER, J., concur.
[1] See Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602.
[2] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, ¶ 8; State v. Taylor, 174 Ohio App.3d 477, 2007-Ohio-7066,882 N.E.2d 945, ¶ 11.
[3] Skinner v. Ry. Labor Executives' Assn. (1989), 489 U.S. 602, 619,109 S.Ct. 1402; State v. Steele, 155 Ohio App.3d 659, 2003-Ohio-7103,802 N.E.2d 1127, ¶ 23; State v. Meyers, 146 Ohio App.3d 563,2001-Ohio-2282, 767 N.E.2d 739, ¶ 41.
[4] Burdeau v. McDowell (1921), 256 U.S. 465, 475, 41 S.Ct. 574;Meyers, supra, at ¶ 41; State v. Hegbar (Dec. 5, 1985), 8th Dist. No. 49828.
[5] Meyers, supra, at ¶ 41; Hegbar, supra.
[6] Blum v. Yaretsky (1982), 457 U.S. 991, 1004, 102 S.Ct. 2777.
[7] See Lugar v. Edmonson Oil Co. (1982), 457 U.S. 922, 939,102 S.Ct. 2744; Lindsey v. Detroit Entertainment, LLC (C.A.6, 2007), 484 F.3d 824,828.
[8] Jackson v. Metropolitan Edison Co. (1974), 419 U.S. 345, 353,95 S.Ct. 449; Lindsey, supra, at 828.
[9] Flagg Bros., Inc. v. Brooks (1978), 436 U.S. 149, 163-164,98 S.Ct. 1729; Lindsey, supra, at 828.
[10] See, e.g., State v. Shively, 5th Dist. No. 2005 CA 00086, 2006-Ohio-3506, ¶ 23-24; Hegbar, supra.
[11] Hegbar, supra.
[12] R.C. 4973.17(D)(1)(a), (b), and (c).
[13] R.C. 4973.17(D)(2)(a) and (b).
[14] Ayers v. Woodard (1957), 166 Ohio St. 138, 143-144,140 N.E.2d 401; Penn. RR. Co. v. Deal (1927), 116 Ohio St. 408, 414, 156 N.E. 402;New York, Chicago0 St. Louis RR. Co. v. Fieback (1912),87 Ohio St. 254, 100 N.E. 889, paragraph one of the syllabus; State v. McDaniel
(1975), 44 Ohio App.2d 163, 174, 337 N.E.2d 173.
[15] State v. Bryant (Dec. 26, 1996), 9th Dist. No. 17618.
[16] (C.A.6, 2005), 428 F.3d 629.
[17] Id. at 637.
[18] Id. (emphasis in original).
[19] Id. at 638.
[20] Manley v. Paramount's Kings Island (2007), S.D.Ohio No. 1:06-CV-634.
[21] Katz v. United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507;State v. Smith, 1st Dist. No. C-061032, 2007-Ohio-3786, ¶ 13.
[22] State v. Matthews (1976), 46 Ohio St.2d 72, 73-74,346 N.E.2d 151; State v. Stallings, 1st Dist. No. C-030233, 2003-Ohio-6918, ¶ 12.
[23] State v. Traore, 1st Dist. No. C-060802, 2007-Ohio-6334, ¶ 8;Stallings, supra, at ¶ 12.
[24] Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223; State v.Heston (1972), 29 Ohio St.2d 152, 155-156, 280 N.E.2d 376;Stallings, supra, at ¶ 12.
[25] See State v. Mercier, 1st Dist. No. C-060490, 2007-Ohio-2017, ¶ 11, affirmed without opinion, 117 Ohio St.3d 1253, 2008-Ohio-1429,885 N.E.2d 942. *Page 1