DECISION.
{¶ 1} The plaintiff-appellant, the state of Ohio, appeals from the trial court's order granting the motion to suppress of the defendant-appellee, Edsel England. England, a Cincinnati police officer, had been charged with five counts of theft in office, a violation of R.C. 2921.41(A)(1). According to the state, England had kept part of a collection of guns and equipment that he had been dispatched to recover from a citizen who had requested police assistance in their disposal. Although England returned a shotgun and rifle to the department, the state alleged that he had illegally kept for himself a handgun, ammunition, and gun-cleaning kits — all of which were recovered the next day after the police executed search warrants for England's residence and vehicle.
 {¶ 2} The trial court granted England's motion to suppress, agreeing with him that the affidavits in support of the search warrants were insufficient to establish probable cause that the missing items would be found in either his residence or his car. In its single assignment of error, the state now argues that the trial court erred in determining that the affidavits were insufficient to establish the necessary nexus between the missing items and the places to be searched.
 {¶ 3} For the following reasons, we hold that the affidavits in support of the search warrants provided a "substantial basis" for the probable-cause determination. Accordingly, we reverse and remand to the trial court for further proceedings.
 I. {¶ 4} Although there were separate warrants issued for England's car and residence, the affidavits in support of each were identical. The warrants were applied for on the same day, November 24, 2003. In their entirety, the affidavits were as follows:
 {¶ 5} "The affiant, Sergeant Barry Ford, SI43, a Cincinnati Police Internal Investigator with 16 years experience, is investigating the theft of property from the Cincinnati Police Department, which occurred on or about November 23, 2003, at 3295 Erie Avenue, Cincinnati[,]Ohio[,] 45208. Sergeant Ford received information that a shotgun, rifle, revolver, ammunition, and a sales receipt for purchase, as well as a pellet gun[,] were turned over to Officer England's custody, specifically to be destroyed by the Cincinnati Police Department. Sergeant Ford verified through Police records the rifle and shotgun were processed through Police Property records and a report was made[;] however[,] the other items reported to have been handed over to Officer England have not been recorded and are not in police custody and control. A search of Officer Edsel England's police locker, equipment bag and police vehicle have already been completed without recovering the property. The suspect, Police Officer Edsel England, was dispatched to a residence located at 3489 Edgeview Drive, Cincinnati[,] Ohio[,] 45213, to take possession of the property on behalf of the City of Cincinnati for disposal and processing. Officer England failed to submit the property in its entirety. Officer England was the police officer dispatched to take possession of the property. Two persons were present at the time the property was taken possession of, and both identified Officer England by name as the recipient of the property. Those two persons were, in fact, the persons who released the property to Officer England. Computer Aided Dispatch records verify Officer England was in fact dispatched, arrived, and completed associated Police records on the property submitted."
 II. {¶ 6} As noted, the municipal court judge who was presented with these affidavits determined that they were sufficient to create probable cause that the missing items could be found in either England's residence or car. A judge's probable-cause determination must be "a practical, common-sense decision" based upon the totality of the circumstances that there is a "fair probability" that the contraband or evidence of a crime will be found in a particular place. Illinois v. Gates (1983),462 U.S. 213, 238, 103 S.Ct. 2317. See State v. Martin, 1st Dist. No. C-040150, 2004-Ohio-6433.
 {¶ 7} Significantly, as this court noted in Martin, "[N]either trial courts nor appellate courts are entitled to substitute their judgment for that of the magistrate by conducting a de novo probable-cause determination. Rather, a reviewing court must simply ensure that the magistrate had a substantial basis for concluding that probable cause existed." Id., citing Gates, supra, at 238-239, 103 S.Ct. 2317, and Statev. George (1989), 45 Ohio St.3d 325, 330, 544 N.E.2d 640. Further, a reviewing court must accord great deference to the probable-cause determination that was made, and doubtful or marginal cases should be resolved in favor of upholding the warrant. Id.
 {¶ 8} England does not dispute that the affidavits presented to the judge provided a substantial basis to conclude that the missing items were somewhere in his possession. Rather, he argues that the affidavits failed to provide any information upon which the judge could have reasonably inferred that he had taken the items home or had stowed them in his car. Absent such a nexus, he argues, the warrants issued here were in the nature of general warrants authorizing the search of any property owned, rented, or used by him based upon mere guesswork. See UnitedStates v. Schultz (C.A.6, 1994), 14 F.3d 1093, 1097.
 {¶ 9} We agree with England that probable cause that a suspect has committed a crime does not automatically generate probable cause to search a suspect's home or automobile. See United States v. Valenzuela,
(C.A.9, 1979), 596 F.2d 824, 828. "The critical element in a reasonable search is not that the owner of the property [to be searched] is suspected of crime but that there is reasonable cause to believe that the specific `things' to be searched for and seized are located on the property to which entry is sought." Zurcher v. Stanford Daily (1978),436 U.S. 547, 556, 98 S.Ct. 1970.
 {¶ 10} But the necessary nexus need not be established by direct evidence. United States v. Whitner (C.A.3, 2000), 219 F.3d 289, 296; see, also, United States v. Patrick (Jan. 6, 2005), C.A.3 No. 04-1721. "While ideally every affidavit would contain direct evidence linking the place to be searched to the crime, it is well established that * * * probable cause can be, and often is, inferred by `considering the type of crime, the nature and items sought, the suspect's opportunity for concealment and normal inferences about where the criminal might hide stolen property."' Whitner, supra, 219 F.3d at 297, quoting United Statesv. Jones (C.A.3, 1993), 994 F.2d 1051, 1056. See, also, United States v.Jackson (C.A.9, 1985), 756 F.2d 703, 705; United States v. Malin (C.A.7, 1990), 908 F.2d 163, 165-66; United States v. Jenkins (C.A.11, 1990),901 F.2d 1075, 1080-81; United States v. Anderson (C.A.4, 1988),851 F.2d 727, 729; United States v. Charest (C.A.1, 1970), 602 F.2d 1015,1017; and State v. Burkholder (Jan. 4, 1983), 2nd Dist. Nos. 83-CA-26 and 83-CA-27.
 {¶ 11} Here the state argues persuasively that the judge who issued the search warrants could have reasonably concluded that there was a "fair probability" that the items would be in either England's home or car given the very short time in which the police had begun their investigation. Less than 24 hours had passed between the time it was discovered that England had not returned the missing items and the issuance of the warrants. In that relatively short time span, officers had already eliminated as possible hiding spots England's locker, equipment bag, and police cruiser. After England's shift was over, he presumably drove home in his car to sleep and to get ready for his next shift. Given the dispatch with which the investigation was unfolding, there was very little opportunity for England to have stowed the missing items anywhere but in his vehicle or home. Certainly it can be said that there was "fair probability" that they would be found in either location.
 {¶ 12} As noted, the question is not whether a different magistrate might have found this information insufficient to support the warrants that were issued. Nor is the question whether the trial court or this court may have reached a different conclusion if asked to issue the warrants. Rather, we are constrained to determine only whether the affidavits provided a "sufficient basis" for the decision that the judge actually made. Although not a rubber stamp, reviewing courts must avoid a "grudging or negative attitude" when assessing probable-cause determinations. United States v. Ventresca (1965), 380 U.S. 102, 108,85 S.Ct. 741. They must be mindful that "probable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules." Gates, supra, at 232, 103 S.Ct. 2317. In making such an assessment, "the issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of evidence." United States v.Lawson (C.A.6, 1993), 999 F.2d 985, 987.
 {¶ 13} Recognizing that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants," Ventresca, supra, at 109, 85 S.Ct. 741, we hold that the trial court's order of suppression was in error. We need not address, therefore, the question whether the good-faith exception established in United States v. Leon (1984), 468 U.S. 897, 104 S.Ct. 3405, applied.
 {¶ 14} Accordingly, the judgment of the trial court is reversed, and this case is remanded for further proceedings in accordance with law.
Judgment reversed and cause remanded.
Hildebrandt, P.J., Gorman and Sundermann, JJ.