The STATE of Ohio, Appellee,

v.

TAYLOR, Appellant.

[Cite as *State v. Taylor,* 174 Ohio App.3d 477, 2007-Ohio-7066.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–070026.

Decided Dec. 28, 2007.

---

478

Joseph T. Deters, Hamilton County Prosecuting Attorney, and James Michael Keeling, Assistant Prosecuting Attorney, for appellee.

Cross, Smith & Associates Co., L.P.A., and Gloria L. Smith, for appellant.

DINKELACKER, Judge.

{¶ 1} Following a jury trial, defendant-appellant, Pierre Taylor, was convicted of one count of possession of marijuana under R.C. 2925.11(A) and one count of trafficking in marijuana under R.C. 2925.03(A)(2). The trial court sentenced him to three years' imprisonment on the possession count and to five years on the trafficking count, to be served consecutively. We affirm the findings of guilt but vacate the sentences imposed.

## I. Facts

{¶ 2} The record shows that in early 2006, officers from the Cincinnati Police Department began investigating Taylor for selling drugs. A confidential informant told them that Taylor was selling large amounts of marijuana from a house at 507 Boal Street. Police officers began watching the house to determine whether they could detect any illegal activity.

{¶ 3} On February 25, 2006, Detective Ken Baker was watching the front of the residence when Taylor and a passenger pulled up in a maroon Denali SUV. Charles Johnson arrived at the same time, driving a blue Ford Taurus. All three got out of their vehicles, spoke briefly, and then went inside the house.

{¶ 4} A short time later, Johnson left the house. The officers noticed a bulge in his coat pocket that had not been there when he had entered the house. Baker

radioed other officers and asked them to follow Johnson's vehicle. They stopped him for a traffic violation.

{¶ 5} The officers discovered that Johnson possessed a small amount of marijuana. He stated that he had just bought marijuana from "Birdman" on Boal Street. The police officers knew that "Birdman" was Taylor's alias. Johnson added that he had seen more marijuana inside the residence.

{¶ 6} Taylor left the residence shortly after Johnson. Police officers followed and arrested him. During a search incident to the arrest, they found keys to 507 Boal Street and a rent receipt for that address on his person. After initially denying that he had anything to do with the residence, Taylor subsequently told police that he had been inside the house. He stated that he had seen several pounds of marijuana inside but that only a "couple of ounces" were left.

{¶ 7} The officers obtained a warrant to search the house. They found a pound of marijuana in a kitchen cabinet, along with scales and plastic bags. They went onto a deck outside the back of the residence and found a small furnace room. The door to the room was locked, but the officers found a key near the door that allowed them to enter.

{¶ 8} Inside the furnace room, they found inside a suitcase about 33 pounds of marijuana that had been broken up into one-pound freezer bags. Other suitcases in the room contained men's clothing and shoes, all in Taylor's sizes. The police officers also found a large teddy bear with a hole where part of the stuffing was coming out. The officers reached inside the bear and found over $18,000 cash. They also found numerous personal papers and a prescription bottle belonging to Taylor.

{¶ 9} Taylor's defense at trial was that he had no connection to the house or its contents. He contended that his brother had rented the house and sublet it to Koriesa Wilkerson, who was present when Johnson, Taylor, and the unidentified third individual had first entered the house. Taylor claimed that he must have left his paperwork and medicine there when he had stayed at the house. The state presented the testimony of the landlord, who stated that Taylor was the person who had rented the house. When shown a photograph of Taylor's brother, the landlord testified that she had never seen that person.

## II.  Search Warrant Issues

{¶ 10} Taylor presents six assignments of error for review. In his first assignment of error, he contends that the trial court erred in overruling his motion to suppress. He raises several issues relating to the search warrant and the subsequent search. This assignment of error is not well taken.

{¶ 11} Appellate review of a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact as true if

competent, credible evidence supports them. But we must independently determine whether the facts satisfy the applicable legal standard.[1]

{¶ 12} First, Taylor argues that the affidavit supporting the search warrant contained false statements. An affidavit supporting a search warrant enjoys a presumption of validity.[2] To successfully attack the veracity of a facially sufficient affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement either "intentionally or with a reckless disregard for the truth."[3] "Reckless disregard" means that the affiant had serious doubts about an allegation's truth.[4] Further, even if the affidavit contains false statements made intentionally or recklessly, a warrant based on the affidavit is still valid unless, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause * * *."[5]

{¶ 13} The affidavit in this case began with the following statement: "The affiant has spoken with a confidential and reliable informant who stated to the affiant that marihuana is being stored and sold from [the] above-listed residence by the tenant." Detective Baker was the affiant. Baker testified that he had never spoken to the informant. Instead, another officer, Timothy Bley, had spoken to the informant and had received the pertinent information. Bley had also used the informant in the past and knew him to be reliable. Baker explained that the misstatement was a "clerical error." He testified that he had used a template with "boilerplate" language and that he had not changed the language to indicate that it was another officer, not the affiant, who had spoken with the informant.

{¶ 14} First, the misstatement was not materially false or misleading. It did not matter which officer had actually spoken to the informant, as the collective knowledge of the officers could have provided probable cause.[6] The

---

1.   *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Hutson*, 1st Dist. Nos. C–060274, C–060275, and C–060276, 2007-Ohio-1178, 2007 WL 779127, ¶ 8.

2.   *State v. Roberts* (1980), 62 Ohio St.2d 170, 178, 16 O.O.3d 201, 405 N.E.2d 247; *State v. Jordan*, 1st Dist. No. C–060336, 2007-Ohio-3449, 2007 WL 1953607, ¶ 9.

3.   *Franks v. Delaware* (1978), 438 U.S. 154, 155–156, 98 S.Ct. 2674, 57 L.Ed.2d 667; *State v. Waddy* (1992), 63 Ohio St.3d 424, 441, 588 N.E.2d 819.

4.   *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 31.

5.   *Waddy*, 63 Ohio St.3d at 441, 588 N.E.2d 819, quoting *Franks*, 438 U.S. at 156, 98 S.Ct. 2674, 57 L.Ed.2d 667.

6.   *Waddy*, 63 Ohio St.3d at 441–442, 588 N.E.2d 819; *State v. Henderson* (1990), 51 Ohio St.3d 54, 57, 554 N.E.2d 104; *State v. Mobley* (May 22, 1989), 12th Dist. No. CA88–08–063, 1989

important information was that the officers had reason to believe that the informant was telling the truth.

{¶ 15} Second, competent, credible evidence showed that Baker had not made a false statement intentionally or with a reckless disregard for the truth. As the trial court stated, the mistake was "regrettable," but the evidence did not show that it was anything more than a misstatement. "Search warrants * * * are often made in haste and the law does not require the information in the supporting affidavits to be perfect." [7]

{¶ 16} Finally, even if all the information about the confidential informant is excised from the affidavit, it still provided probable cause to search the residence. The remainder of the affidavit stated, "On February 25, 2006 officers began surveillance at Pierre Taylor's residence at 507 Boal Street. Undercover officers observed Pierre Taylor arrive at the residence in a Burgundy Denali * * * and enter the residence. Officers also observed Charles Johnson arrive at the residence and go inside with Pierre Taylor. Mr. Johnson exited the residence after a short time and officers executed a traffic stop on Mr. Johnson in District Three. Mr. Johnson admitted to purchasing an ounce of marijuana from 'Birdman.' Mr. Johnson further advised that 'Birdman' had additional marijuana inside the residence at 507 Boal Street. Pierre Taylor exited 507 Boal Street and left the area in the Burgundy Denali. Officers stopped Pierre Taylor and read him his rights. Pierre Taylor initially denied any association to the 507 Boal Street residence. Officers found keys that operated the door at 507 Boal Street in Pierre Taylor's hand. Police also recovered a rent receipt for 507 Boal Street in Pierre Taylor's pocket. Pierre Taylor then advised that he came from the residence and there was a couple pounds inside but there is only a couple ounces of marijuana left at present and would not explain where the additional contraband went. *Based on the investigation conducted by the affiant and other members of law enforcement,* the affiant believes there are additional drugs, and proceeds made from the sales of drugs, being stored within the above listed residence." (Emphasis added.)

{¶ 17} Thus, even with the disputed language removed, the affidavit provided the magistrate with a substantial basis for concluding that contraband or evidence of a crime would be found at the Boal Street residence.[8] As a reviewing court, we must accord great deference to the magistrate's probable-cause determina-

WL 53604. See also *State v. Kiefer,* 1st Dist. No. C–030205, 2004-Ohio-5054, 2004 WL 2244553, ¶ 14.

7. *Mobley.*

8. *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraphs one and two of the syllabus; *State v. England,* 1st Dist. No. C–040253, 2005-Ohio-375, 2005 WL 267669, ¶ 7.

tion, and we should resolve even doubtful or marginal cases in favor of upholding the warrant.[9]

{¶ 18} Next, Taylor contends that the warrant was based on stale information because the affidavit did not state when the confidential informant had provided the information to the police. No arbitrary time limit dictates when information becomes stale. The issue is whether the affidavit contains specific facts to justify a finding that contraband or evidence is probably at the premises to be searched.[10]

{¶ 19} In this case, the affidavit indicated that the police officers had observed activity indicative of drug sales that same day. Thus, the affidavit provided enough of a temporal context to show that probable cause existed to believe that contraband or evidence was on the premises at the time the officers sought the warrant. Consequently, we cannot hold that the information in the warrant was stale.

{¶ 20} Finally, Taylor contends that the officers exceeded the scope of the warrant. The warrant allowed the police officers "to enter into the premises at night located at 507 Boal Street, Hamilton County, City of Cincinnati, Ohio 45202, further described as a single family structure constructed of brown wood." Taylor argues that the warrant did not give the officers authority to search the locked furnace room. We disagree.

{¶ 21} This court has stated, "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search."[11] Further, other courts have held that a warrant for a search of a particular residence or for "the bottom half of a building" allows the search of the basement as long as it is not clearly a separate living unit.[12]

{¶ 22} In *United States v. Canestri*,[13] the court held that a warrant for the

---

9. *George,* at paragraph two of the syllabus; *England* at ¶ 7.

10. *State v. Rogers,* 12th Dist. No. CA2006–03–055, 2007-Ohio-1890, 2007 WL 1174866, ¶ 43; *State v. German,* 1st Dist. No. C–040263, 2005-Ohio-527, 2005 WL 323688, ¶ 15.

11. *State v. Brewster,* 157 Ohio App.3d 342, 2004-Ohio-2722, 811 N.E.2d 162, ¶ 35, quoting *United States v. Ross* (1982), 456 U.S. 798, 820, 102 S.Ct. 2157, 72 L.Ed.2d 572.

12. See *State v. Mitchell,* 8th Dist. No. 88131, 2007-Ohio-3896, 2007 WL 2206843, ¶ 24; *State v. Owens* (Apr. 29, 1994), 6th Dist. No. H–93–025, 1994 WL 159481; *State v. Myers* (Apr. 8, 1992), 9th Dist. No. 2042, 1992 WL 74214; *United States v. Legault* (D.Mass.2004), 323 F.Supp.2d 217, 221–222.

13. (C.A.2, 1975), 518 F.2d 269.

search of a particular house to look for stolen firearms allowed police officers to enter a locked storage room in the basement.[14] It noted that "a locked storage room is a natural and logical place to hide stolen guns," and no evidence at the suppression hearing showed that the subject of the search did not have access to the storeroom.[15]

{¶ 23} Similarly, in this case, though the furnace room had a separate entrance, it was a part of the residence. It was barely large enough to house the furnace and the heat ducts. Taylor had keys to the residence and a rent receipt bearing the address on his person. Further, the key to the furnace room would have been accessible to anyone in the residence.[16]

{¶ 24} Under the circumstances, we hold that the search warrant allowing the officers to search the single-family residence at 807 Boal Street permitted the officers to search the locked furnace room. The search of the room did not exceed the scope of the warrant.

{¶ 25} In sum, we find no merit in Taylor's arguments relating to the search warrant and affidavit. We hold that the trial court did not err in denying his motion to suppress, and we overrule his first assignment of error.

### III. Weight and Sufficiency

{¶ 26} In his second assignment of error, Taylor contends that the evidence was insufficient to support his convictions. Our review of the record shows that a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the state had proved beyond a reasonable doubt all the elements of trafficking in marijuana under R.C. 2925.03(A)(2) and possession of marijuana under R.C. 2925.11(A). Therefore, the evidence was sufficient to support the convictions.[17] In essence, Taylor argues that the state's evidence was not credible. But matters as to the credibility of evidence are for the trier of fact to decide.[18] We overrule Taylor's second assignment of error.

---

14. Id. at 273–274.

15. Id. at 274.

16. See *United States v. Jordan* (C.A.6, 1965), 349 F.2d 107, 109.

17. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

18. *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 116; *State v. Matthews*, 1st Dist. Nos. C–060669 and C–060692, 2007-Ohio-4881, 2007 WL 2745211, ¶ 24.

{¶ 27} In his third assignment of error, Taylor contends that his convictions were against the manifest weight of the evidence. After reviewing the record, we cannot hold that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse Taylor's convictions and order a new trial. Therefore, his convictions were not against the manifest weight of the evidence.[19] We overrule Taylor's third assignment of error.

## IV. Evidentiary Issues

{¶ 28} In his fourth assignment of error, Taylor contends that the trial court denied him a fair trial due to various evidentiary rulings. First, he argues that the trial court erred in allowing two police officers to testify as expert witnesses on drug transactions and in allowing them to testify that Taylor was a mid- to high-level drug dealer. We have previously held that the trial court did not abuse its discretion in qualifying a police officer as an expert in drug trafficking. We stated that due to the officer's experience in narcotics trafficking, he possessed knowledge that would aid the jury on matters "beyond its ken." [20]

{¶ 29} In this case, both officers had substantial training and experience in drug investigations that qualified them as experts and allowed them to testify to matters beyond the knowledge or experience of laypersons. Their testimony was based on reliable, specialized information. Further, their testimony that Taylor was a mid- to high-level drug dealer was based on their own observations and was within the scope of their expertise. Therefore, the trial court did not abuse its discretion in qualifying them as experts and in allowing them to give their opinions.[21]

{¶ 30} Next, Taylor contends that the trial court erred in allowing a police officer to testify that Taylor had the reputation of being "an extremely violent individual on the street." Despite Taylor's contention to the contrary, the record shows that the trial court sustained the objection to that comment and ordered it stricken. The court also instructed the jurors that they could not consider any statements that the court had struck and that they should treat the statements as if they had never heard them. We presume that the jury followed the court's instructions.[22] Therefore, the statement did not deny Taylor a fair trial, and we overrule his fourth assignment of error.

---

19. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541; *Matthews* at ¶ 24.

20. *State v. Campa* (Mar. 29, 2002), 1st Dist. No. C–010254, 2002 WL 471174.

21. See Evid.R. 702 and 703; *State v. Henderson*, 8th Dist. No. 88185, 2007-Ohio-2372, 2007 WL 1447711, ¶ 53–69; *State v. Rangel* (2000), 140 Ohio App.3d 291, 294–295, 747 N.E.2d 291.

22. *State v. Stallings* (2000), 89 Ohio St.3d 280, 286, 731 N.E.2d 159; *Matthews* at ¶ 18.

## V. Ineffective Assistance of Counsel

{¶ 31} In his sixth assignment of error, Taylor contends that he was denied effective assistance of counsel. But he makes only a general claim; he does not specify how counsel was ineffective. He has not demonstrated that his counsel's representation fell below an objective standard of reasonableness or that, but for counsel's unprofessional errors, the results of the proceeding would have been otherwise. Therefore, he has failed to meet his burden to show ineffective assistance of counsel,[23] and we overrule his sixth assignment of error.

## VI. Allied Offenses of Similar Import

{¶ 32} In his fifth assignment of error, Taylor contends that his sentences were contrary to law. He argues that his two convictions involved allied offenses of similar import. We agree.

{¶ 33} This court has held that possession of drugs under R.C. 2925.11 and trafficking in the same drugs under R.C. 2925.03(A)(2) are allied offenses.[24] Consequently, we sustain Taylor's fifth assignment of error. We vacate the consecutive sentences imposed and remand the case to the trial court to enter a single conviction and sentence under either R.C. 2925.11(A) or R.C. 2925.03(A)(2). We affirm the trial court's judgment in all other respects.

Judgment affirmed in part,
sentences vacated,
and cause remanded.

PAINTER, P.J., and HENDON, J., concur.

---

23. *Strickland v. Washington* (1984), 466 U.S. 668, 687–689, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Hirsch* (1998), 129 Ohio App.3d 294, 314–315, 717 N.E.2d 789.

24. *Matthews* at ¶ 32–35; *State v. Cabrales*, 1st Dist. No. C–050682, 2007-Ohio-857, 2007 WL 624995, ¶ 36.