{¶ 81} Respectfully, I dissent as to the conclusion of the majority that Coleman was not entitled to a hearing pursuant to Franks v.Delaware (1978), 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667. I concur with the majority's resolution of the forfeiture issue. *Page 48 
 {¶ 82} The warrants for the residences on Strathmore Road in East Cleveland and Revere Road in Cleveland Heights essentially stemmed from information from a CI or CRI that someone named Eddie Coleman sold drugs from a Strathmore Road address and kept money from drug sales at a Revere Road address. There was only one surveillance by the affiant to "check out" this information, that being an alleged drug transaction at the Strathmore Road address. It is only affiant's surveillance of this transaction and license plate "run" that provided any support for the assertions of the CI or CRI that the drug seller was Coleman.
 {¶ 83} Coleman contends that the drug transaction at the Strathmore Road house never occurred at all; in short, that the drug sale scenario was "made up" by the affiant. In support of this, he proffered evidence that the gold-colored Escalade with license plates ECF 7159 could not possibly have been seen by the affiant on the day of the alleged transaction because, in fact, on any date prior to June 8, 2007, those plates were in the possession of Central Cadillac Hummer, and not mounted on the Escalade.
 {¶ 84} Prior to Franks, in the State of Delaware one could not attack the veracity of the allegations in a warrant; if the warrant on its face established probable cause, then a search pursuant to that warrant was legal. With the advent of Franks, the United States Supreme Court held that if a defendant was able to make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in a search warrant affidavit, and if the allegedly false statement was necessary to the finding of probable *Page 49 
cause, the Fourth Amendment to the United States Constitution required that a hearing be held at the defendant's request.
 {¶ 85} Here, in requesting a hearing under Franks, Coleman submitted affidavits that, if believed, inexorably lead to the conclusion that the affiant in the search warrant lied to the issuing magistrate. The majority refers to the statement by the police affiant variously as "an inaccurate statement regarding the license plates" and "misstatement as to the license plates." If Coleman's evidence is believed, these are not simply inaccurate statements or misstatements, they were knowingly and intentionally false.
 {¶ 86} The affiant stated in the affidavits for the search warrants that within 72 hours prior to May 25, 2007 (the date he signed the affidavit) and at 1753 Strathmore Road, he viewed "a gold-colored Cadillac Escalade truck with Ohio license plate ECF7159 arrive at the location[,]" and that he did "run a computerized LEADS check of Ohio License plate ECF7159 which listed to VAUL Trust with home address of 1957 Revere in Cleveland Heights, Ohio with additional owner of Eddie Coleman ***." (Emphasis added.) Accordingly, he obtained warrants to search the Strathmore Road and Revere Road houses.
 {¶ 87} Coleman submitted his own affidavit that the aforementioned license plates were not placed on the Escalade before June 8, 2007 (although issued by the Bureau of Motor Vehicles ("BMV") on May 22, 2007). Further, Coleman submitted an affidavit from Jennifer C. Ouk of Central Cadillac Hummer that the license plates at issue were not picked up by Coleman from Central Cadillac Hummer until June 8, *Page 50 
2007. In short, the evidence submitted by Coleman showed that those license plates could not possibly have been on the new gold Escalade on May 25, 2007, or any other date prior thereto.
 {¶ 88} The trial judge denied Coleman a hearing on this issue. Although she was silent as to her reasons for this denial (another allegation of error raised by Coleman, and I submit, a valid one under Crim. R. 12(F)), the majority holds that if one excises the "inaccurate statement" or "misstatement" concerning the license plates, there remains sufficient probable cause to justify the issuance of the warrant, and hence a hearing was unnecessary. I disagree.
 {¶ 89} Coleman, by producing evidence that the affiant could not possibly have viewed the license plates on the gold Escalade at the time of the drug buy, has cast doubt over all the information providedby him in the affidavits. And each and every paragraph of the affidavits at issue begin with "[a]ffiant avers." While there was evidence in the affidavits that the CI or CRI might be able independently of the affiant to provide information in support of probable cause, that is not apparent upon the face of the affidavits. The problem of "excising" the false information from the affidavit is further complicated by affiant's statement that "[a]ffiant has not always personally observed everything described below, but that which he did not personally observe was described to him by the other investigating officers and or agents who did." (Paragraph seven of each affidavit.)
 {¶ 90} As to the warrant for the Revere Road house, the affiant's statement that he "ran" the plates, which led to the address of Coleman in Cleveland Heights, is *Page 51 
again apparently false; he could not have "run" a plate that was not there. However, based again upon the license plates and the resulting information obtained from the BMV, a warrant was obtained for Coleman's Cleveland Heights home.
 {¶ 91} The majority would excise only a half-sentence in paragraph ten, and the entirety of paragraph 16, before exploring whether there remains sufficient evidence of probable cause to justify a search of either premises, and concludes that there was. But the affiant's statement concerning the license plates was the gravamen of the probable cause in both warrants.[3] I would excise all portions of the affidavit that are based upon or depend upon the information provided by the affiant (i.e., everything except the portions of the affidavit thatappear to rely upon the CI or CRI.)[4] As a result of that exercise, there is facially insufficient remaining evidence of probable cause, and Coleman is hence entitled to a hearing on this matter where he would be permitted to attack the veracity of the warrants' affidavits. *Page 52 
 {¶ 92} Coleman additionally challenges the trial court's denial of his motion to reveal the identity of the informant. The nature of the alleged false information contained in the affidavit casts doubt upon the entire scenario claimed to have taken place at the Strathmore Road address. If the affidavits of Coleman and Central Cadillac Hummer are true, and no credible explanation is advanced by the officer to explain how the drug dealer arrived at the drug deal in a car bearing plates that were, at the time not in Coleman's possession (and accordingly not mounted on the gold Cadillac Escalade), all of the testimony of the officer should be "excised." All that then remains is the CI or CRI. If this search were to be upheld, only the testimony of the CI or CRI could provide the necessary evidence.
 {¶ 93} Accordingly, I would reverse the conviction in this matter, and remand the case to the trial court for a Franks hearing. Further, I would direct the trial court pursuant to Crim. R. 12(F) that, as factual findings are necessary in determination of these issues, to state its essential findings upon the record.
[3] The only thing identifying Coleman (other than perhaps the CI or CRI) as the drug seller in the Strathmore warrant is the BMV listing to the license plate. The only thing justifying the warrant for the Cleveland Heights home (other than the CI's or CRI's comment "he keeps his money there") is the address that was obtained from the BMV as a result of the alleged LEADS check of the license plates.
[4] It should be noted that State v. Taylor, 174 Ohio App.3d 477,2007-Ohio-7066, cited by the majority for the proposition of excising inaccurate statements, concerned a search warrant that erroneously stated that the affiant had spoken with the informant when, in fact, another officer was the one who had spoken with the informant. The appellate court held first, that the "misstatement was not materially false or misleading[,]" id. at ¶ 14, and secondly, that "competent credible evidence showed that Baker [the affiant] had not made a false statement intentionally or with a reckless disregard for the truth." Id. at ¶ 15. Hence, the mistake was "regrettable," but the evidence did not show that it was anything more than a misstatement. Id. "`Search warrants *** are often made in haste and the law does not require the information supporting the affidavits to be perfect.'" Id., quotingState v. Mobley (May 22, 1989),12th Dist. No. CA88-08-063. This is not at all the situation in the case at bar. *Page 1