[Cite as *State v. Detamore*, 2018-Ohio-297.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 16 CAA 04 0018 |
| SYAMANTAKA DETAMORE | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:   Criminal Appeal from the Court of Common
                 Pleas, Case No.  15 CR I 03 0124

JUDGMENT:          Affirmed

DATE OF JUDGMENT ENTRY:    January 25, 2018

APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

CAROL HAMILTON O'BRIEN    LINDA L. KENDRICK
PROSECUTING ATTORNEY     79 North Sandusky Street
BRIAN J. WALTER        Delaware, Ohio  43015
ASSISTANT PROSECUTOR
140 North Sandusky Street
Delaware, Ohio  43015

*Wise, J.*

{¶1} Defendant-Appellant Syamantaka Detamore appeals following his conviction, in the Court of Common Pleas, Richland County, on one count of trafficking in drugs and one count of possession of drugs. Plaintiff-Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2} On January 13, 2015, state and federal agents assigned to the "Bulk Cash Unit" of the Department of Homeland Security conducted surveillance outside of a motel in Columbus, Ohio. During this time, the agents observed a Toyota Tundra truck, bearing California registration, enter the motel parking lot. The driver, later identified as Loi Dang, parked the Tundra, exited, and retrieved some items from near the truck's tailgate. Dang then walked to a nearby gas station and purchased some items, displaying large amounts of United States currency.

{¶3} Dang thereafter returned to his truck and drove off. The agents maintained surveillance on Dang as he proceeded to a McDonald's Restaurant parking lot located in Orange Township, Delaware County. As they watched, a green Chevrolet Silverado truck, bearing Ohio registration, pulled into the parking lot and parked next to Dang's truck. The driver of the Silverado was ultimately determined to be appellant. Dang entered the passenger side of the Silverado, where he remained for approximately five or ten minutes. Dang then returned to his Tundra and traveled to a nearby WalMart store, apparently for purposes of making a wire transfer.

{¶4} In the meantime, appellant drove off in the Silverado, with some of the agents following. He proceeded to his residence located on Taggart Road in Delaware, Ohio. The agents then watched as appellant departed his residence about twenty minutes

later. As part of their observations, the agents witnessed appellant engage in driving patterns they associated with attempts at evading pursuers. Appellant ended up in an Arby's Restaurant parking lot in Orange Township.

{¶5} A short time later, Dang entered the parking lot in the Tundra, parking in proximity to appellant's Silverado. Dang got out and again entered the passenger side of the truck. Appellant was then observed reaching behind his seat, into the extended cab section, retrieving a white bag. Appellant handed the bag to Dang, who exited the truck with the bag in hand. Some of the agents continued surveillance on the Silverado as it exited the area.

{¶6} After this second meeting, the agents, suspicious of an illegal drug transaction, stopped Dang. In the Tundra, agents recovered the aforesaid white bag, which contained marijuana. Agents also located a hidden compartment beneath the bed liner along the rear of the truck which contained more than $25,000.00. Dang told the agents he had purchased the drugs from appellant. Dang also advised that appellant had quoted him a price of $2,500.00 to $3,000.00 per pound of marijuana.

{¶7} Appellant was subsequently stopped in his Silverado, and about $1,000.00 in United States currency was found in his possession. As a result, Detective Clint Smith of the Bulk Cash Unit made contact with the Delaware County Drug Task Force, requesting assistance. Detective Nicholas Strasser of the Delaware City Police Department spoke with some of the special agents by phone. After the agents explained the events precipitating the stop, Detective Strasser prepared a search warrant affidavit, ultimately obtaining a search warrant for appellant's residence on Taggart Road.

**{¶8}** The search warrant request was heard and signed by a Delaware County Municipal Court judge. Officers from the Drug Task Force executed the warrant that evening.

**{¶9}** On March 27, 2015, the Delaware County Grand Jury indicted appellant on one count of trafficking in drugs (R.C. 2925.03(A)(2)), with attendant forfeiture specifications, and one count of possession of drugs (R.C. 2925.11(A)).

**{¶10}** On June 22, 2015, appellant filed a motion to suppress the evidence obtained as a result of the search of his residence. On June 26, 2015, appellant filed a supplemental motion to suppress. The State thereafter filed a memorandum contra.

**{¶11}** Following a hearing, the trial court denied the motion and supplemental motion to suppress via a judgment entry issued on September 14, 2015.

**{¶12}** The matter subsequently proceeded to trial. Appellant was found guilty of both of the above counts by jury verdict on February 5, 2016.

**{¶13}** On March 15, 2016, appellant was sentenced *inter alia* to a two-year period of community control sanctions, with the trial court merging the counts for sentencing and electing to sentence as to the first count.

**{¶14}** Appellant then filed a direct appeal through appointed counsel. A merit brief, as well as a motion to withdraw from representation, was filed on November 14, 2016, pursuant to *Anders v. California* (1968), 386 U.S. 738, 87 S.Ct. 1396, 18 L.E.d.2d 493. Appellant filed a supplemental brief *pro se* on March 28, 2017. The State filed its response brief on June 21, 2017.

**{¶15}** This Court then reviewed the record and the briefs and found colorable issues existed for merit review. We therefore overruled appellant's counsel's motion to

withdraw and ordered counsel to proceed on the appeal. *See State v. Detamore*, 5th Dist.

Delaware No. 16 CAA 04 0018, 2017-Ohio-7218 (decided August 4, 2017).

**{¶16}** Appellant, via counsel, filed a new brief on September 13, 2017. The State

filed its response brief on September 14, 2017. Appellant, without obtaining leave of this

Court, filed a *pro se* "memorandum" on November 30, 2017.[1]

**{¶17}** Appellant herein raises the following sole Assignment of Error:

**{¶18}** "I.   THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-

APPELLANT'S MOTION TO SUPRESS [SIC] EVIDENCE."

I.

**{¶19}** In his sole Assignment of Error, appellant contends the trial court erred in

denying his motion to suppress the evidence obtained as a result of the execution of the

search warrant. We disagree.

<u>Standards of Review</u>

**{¶20}** There are three methods of challenging on appeal a trial court's ruling on a

motion to suppress. First, an appellant may challenge the trial court's finding of fact.

Second, an appellant may argue the trial court failed to apply the appropriate test or

correct law to the findings of fact. Finally, an appellant may argue the trial court has

incorrectly decided the ultimate or final issue raised in the motion to suppress. When

reviewing this third type of claim, an appellate court must independently determine,

without deference to the trial court's conclusion, whether the facts meet the appropriate

legal standard in the given case. *See State v. Fanning* (1982), 1 Ohio St.3d 19, 437

---

[1]   Because this appeal is no longer proceeding under *Anders*, we will not rely upon the *pro se* memorandum.

N.E.2d 583; *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141; *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. The United States Supreme Court has held that as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *See Ornelas v. United States* (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911.

{¶21} The Fourth Amendment to the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

{¶22} Section 14, Article I, of the Ohio Constitution similarly states: "The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized."

{¶23} Thus, these provisions prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271.

{¶24} When issuing a search warrant, a judge or magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the

affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. George* (1980), 45 Ohio St.3d 325, at paragraph one of the syllabus, citing *Illinois v. Gates* (1983), 462 U.S. 213, 238–239. As a reviewing court, we must accord great deference to the issuing judge's determination of probable cause. *See George,* at paragraph two of the syllabus. Doubtful or marginal cases should be resolved in favor of upholding the warrant. *Id.* The United States Supreme Court has held that the totality of the circumstances must be examined on the question of whether probable cause existed for a search warrant. *Illinois v. Gates, supra.* "Probable cause" means only the probability and not a prima facie showing of criminal activity. *George, supra,* at 644. *See, also, Beck v. Ohio* (1964), 379 U.S. 89.

{¶25} "In essence, in reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant, our duty is to ensure that the magistrate or judge who issued the warrant had a substantial basis for concluding that probable cause existed." *State v. McElfresh*, 5th Dist. Licking No. 13 CA 73, 2014-Ohio-2605, ¶ 23, citing *George, supra,* at paragraph two of the syllabus.

### Analysis

{¶26} In the case *sub judice*, the issuing judge relied upon an affidavit prepared by Detective Nicholas Strasser based on information he had obtained from the Homeland Security agents, *i.e.*, "derived from other experienced narcotics officers," who had: (1) observed a meeting between a suspected narcotics seller (appellant) and a suspected buyer (Dang); (2) observed the suspected seller's vehicle return to his residence (the focus of the search warrant) for approximately twenty minutes; (3) observed the

suspected seller reunite with the suspected buyer, and then obtain a white bag from his truck and hand it to the suspected buyer; (4) made contact with the suspected buyer who stated he had just picked up some marijuana; (5) observed marijuana in the aforesaid white bag; (6) made contact with and identified the suspected seller via a traffic stop; (7) confirmed that the truck was registered to appellant, whose home address was listed as the same address that he had returned to between the time of the first meeting with the buyer and the sale of the marijuana. Detective Strasser, as the affiant, also indicated his level of participation in the investigation and listed the source of the information in the affidavit as members of Homeland Security, Bulk Cash Unit.

**{¶27}** Appellant first contends that "[t]he information provided in the affidavit simply did not allow a judge to draw the conclusion that drugs or other contraband associated with drug trafficking, drug possession, permitting drug abuse, or other related crimes were likely to be found within [the] residence." Appellant's Brief at 2. In particular, appellant maintains there was no evidence that appellant was observed actually entering his house or garage when he returned to his residence after the first meeting with Dang at the McDonald's parking lot. Appellant also charges that the affidavit lacks particularity as to how the affiant obtained his information. However, in reviewing the sufficiency of probable cause in a search warrant affidavit, neither a trial court nor an appellate court should substitute its judgment for that of the issuing magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause. *See State v. Long*, 5th Dist. Richland No. 11CA95, 2012-Ohio-3091, ¶ 21, citing *Illinois v. Gates, supra.* In the case *sub judice*, we hold Detective Strasser's averment in the affidavit that appellant had been observed by Homeland Security agents returning to his residence for

about twenty minutes as part of the entirety of the marijuana sale to Dang, in light of the remaining circumstances presented, is sufficient for a determination that the issuing judge had a substantial basis for concluding probable cause existed to grant a search warrant for said residence.

**{¶28}** Appellant additionally contends the search warrant affidavit included false or misleading information by overstating the amount of marijuana seized from Dang after the transaction in the Arby's parking lot as 1.5 pounds (approximately 680 grams). Detective Strasser conceded at the suppression hearing that the amount was less than that (S.Tr. at 31), having provided in a summary report that the amount was approximately 200 grams. He also conceded he had relied on the information provided by the federal agents. S.Tr. at 42. Appellant nonetheless urges that the "good-faith" exception should not apply to this mistake and to the remaining circumstances.

**{¶29}** However, we have recognized that where there is not competent, credible testimony demonstrating the officer made a false or intentionally misleading statement with a reckless disregard for the truth, the misstatement does not render the warrant affidavit invalid. *State v. Kadri*, 5th Dist. No. 2016 AP 06 0036, 2017-Ohio-604, 85 N.E.3d 207, ¶ 22, citing *State v. Taylor,* 174 Ohio App.3d 477, 882 N.E.2d 945, 2007-Ohio-7066 (1st Dist.). "Search warrants *** are often made in haste and the law does not require the information in the supporting affidavits to be perfect." *State v. Mobley*, 12th Dist. Warren No. CA88-08-063, 1989 WL 53604 (citations omitted). In this instance, while we recognize that offense levels in the Revised Code for marijuana trafficking and possession vary based on weight, the weight discrepancy would not have affected the fundamental illegality of the underlying drug transaction under Ohio law. Therefore, we again conclude

there was a substantial basis for concluding that probable cause existed to support the search warrant's issuance.

**{¶30}** Therefore, having found no reversible error as to the validity of the search warrant, we otherwise hold the trial court did not err in denying the motions to suppress under the facts and circumstances of the present case.

**{¶31}** Appellant's sole Assignment of Error is overruled.

**{¶32}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Delaware County, Ohio, is hereby affirmed.

By: Wise, J.

Delaney, P. J., and

Baldwin, J., concur.


JWW/d 0110