**[Cite as *State v. Bailey*, 2022-Ohio-4028.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210584 |
| | | TRIAL NO. B-2004719 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| RYAN BAILEY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: November 14, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mary Stier*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Sarah Nelson*, Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Defendant-appellant, Ryan Bailey, appeals the trial court's denial of his motion to suppress. In this case, we are asked to determine whether Bailey, who had been stopped for a missing headlight, was surrounded and blocked-in by police officers, ordered out of his car, handcuffed, patted down, and told that a K-9 unit would be walked around his car, was "in custody" when he was questioned by an officer without being informed of his *Miranda* rights. Because we agree that a reasonable person in such a situation would have understood himself to be in custody, we hold that the trial court should have granted Bailey's motion to suppress.

### *Facts and Procedure*

{¶2} On September 12, 2020, defendant-appellant Ryan Bailey was stopped by Cincinnati Police in the parking lot of a Cincinnati Metropolitan Housing Authority apartment complex in Cincinnati, Ohio. Officers searched his car and found marijuana and a firearm.

{¶3} On September 17, 2020, Bailey was indicted on three counts: (1) receiving stolen property in violation of R.C. 2913.51(A); (2) carrying a concealed weapon in violation of R.C. 2923.12(A)(2); and (3) improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(B). Each charge is a fourth-degree felony. On July 7, 2021, Bailey filed a motion to suppress statements he made admitting to the marijuana in the vehicle, and the other evidence found based on those statements.

{¶4} At the suppression hearing, Officer Tom Chiappone testified that members of the gun task force had been dispatched to the parking lot around 11:30 p.m. to disperse "a large group gathering, [of people] using marijuana in the open." Officer Chiappone's partner, Trent Meucci, testified that Bailey caught the attention of

an officer because he was trying to exit the lot "in a hurry." Suspecting his exit was precipitated by the police presence, an officer communicated this information over the radio. Officers Chiappone and Meucci heard the call, saw the car, activated their lights, and positioned their cruiser to block Bailey from exiting the parking lot. The officers testified that they had observed a broken headlight on Bailey's car prior to the stop.

{¶5} After relaying Bailey's information to dispatch, officers learned that Bailey had several open capiases for traffic offenses. Meucci asked Bailey to step out of his vehicle and he placed Bailey in handcuffs while the capiases were being investigated. Meucci testified that during the walk to his police cruiser, he:

> advised [Bailey] that we were going to call and confirm the warrants; that he wasn't necessarily going to go to jail * * * I did ask him, maybe twice, if there was anything in the vehicle. I made him aware that there was a K-9 officer that was on scene. And I simply asked, if the K-9 did an open-air sniff, would he hit on your vehicle? And he said, Yes, I have weed in the car.

The body-camera footage, which was played at trial, largely confirms Meucci's account of the interaction and shows that there were at least three marked police cruisers and five uniformed officers at the scene. While handcuffing Bailey, Meucci can be heard saying, "Doesn't mean you're going to jail or anything, my friend. We gotta at least check everything out." Then, Meucci led Bailey towards his police cruiser. On the way to the cruiser, Bailey was patted down as the following exchange occurred:

> **MEUCCI**: You ain't got anything on you, do you? Cause I'm going to be checking–just let me know.
>
> **BAILEY**: No.

3

**MEUCCI**: Anything in the car?

**BAILEY**: No.

**MEUCCI**: You're the registered owner, right?

**BAILEY**: Yes.

**MEUCCI**: So if the dog walked around your car it wouldn't hit on anything? Marijuana or anything like that?

**BAILEY**: I might – I have some weed in the car.

At this point, approximately three minutes had elapsed since Bailey's car had been stopped. A second officer, Officer Twehues, joined the pair, and asked:

**TWEHUES:** You have some weed in the car?

**BAILEY:** Yes.

**TWEHUES**: Where's it at?

**BAILEY**: Under my radio

Meucci continued:

**MEUCCI**: If we can get you re-cited on these we'll work with you man.

**BAILEY**: Okay

**MEUCCI**: There's nothing in the car is there?

**BAILEY**: Just the weed.

**MEUCCI**: Just the weed? Okay cause they're gonna check, alright? I'll get you in the car here in a second – [if it's] something we can get you re-cited on, we'll definitely take care of you.

{¶6} Bailey was then placed in the back of the police cruiser, still in handcuffs. Around the same time, police searched his vehicle and, in addition to the marijuana, found a handgun under the driver's seat that was discovered to be stolen.

4

Approximately 90 seconds after being put in the backseat, he was advised of his *Miranda* rights.

**{¶7}** In his motion to suppress, Bailey argued that his statements admitting to the marijuana in the vehicle, and any related evidence, must be suppressed pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because he made the statements during a period of custodial interrogation, and prior to being advised of his *Miranda* rights. He further argued that any evidence found based on those statements must also be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 484-489, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In denying Bailey's motion to suppress the trial court reasoned that "a reasonable person would not conclude that the Defendant was in custody" because he was told that he was not necessarily going to jail, there were no threats or intimidating comments made to him, the intrusion was minimal, and the exchange was brief and to the point.[1]

**{¶8}** On October 21, 2021, Bailey withdrew his not-guilty plea and pleaded no contest to all the charges. The court found him guilty as charged, and sentenced him to three years of community control, including a residential term at River City Correctional Center and postresidential community supervision. Bailey timely appealed, and his sentence was stayed pending the appeal.

### Law and Analysis

**{¶9}** In Bailey's sole assignment of error, he contends that the trial court erred when it denied his motion to suppress his statements about the marijuana in his vehicle. The state contends that the motion was properly denied because Bailey was

---

[1] In reaching this conclusion, the trial court relied on ten factors set forth in *State v. McCrary*, 2d Dist. Montgomery No. 18885, 2002-Ohio-396.

5

not subject to custodial interrogation at the time of his admission, and thus a *Miranda* warning was unnecessary.

{**¶10**} This court's review of a motion to suppress is " 'a mixed question of law and fact. We must accept the trial court's findings of fact as true if competent, credible evidence supports them. But we must independently determine whether the facts satisfy the applicable legal standard.' " *State v. Thompson*, 1st Dist. Hamilton No. C-200388, 2021-Ohio-3184, ¶ 10, quoting *State v. Taylor*, 174 Ohio App.3d 477, 2007-Ohio-7066, 882 N.E.2d 945, ¶ 11 (1st Dist.). We review de novo " 'whether the facts satisfy the applicable legal standard.' " *Id.,* quoting *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{**¶11**} Generally, when "police take a suspect into custody and then ask him questions without informing him of [his *Miranda* rights], his responses cannot be introduced into evidence to establish his guilt." *Berkemer v. McCarty*, 468 U.S. 420, 429, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Derivative evidence when "obtained by exploitation of the illegal search or seizure," known as fruit of the poisonous tree, also cannot be introduced. *State v. Pies*, 140 Ohio App.3d 535, 541, 748 N.E.2d 146 (1st Dist.2000); s*ee Wong Sun,* 371 U.S. at 484-489, 83 S.Ct. 407, 9 L.Ed.2d 441.

{**¶12**} The key issue in this case is whether Bailey was subject to custodial interrogation such that the protections afforded by *Miranda* were triggered. In *Miranda*, the Supreme Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way * * *." *Miranda*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, first paragraph of the syllabus.

{¶13} While not all traffic stops trigger *Miranda*, "[i]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." *Berkemer* at 440. In *Berkemer,* the United States Supreme Court reasoned that traffic stops are unlike other forms of police questioning because (1) the stops are "presumptively temporary and brief," and (2) the stops are "substantially less 'police dominated.' " *Id.* at 439. Ultimately, the court held that "the only relevant inquiry in determining whether a person is in custody is how a reasonable man in the suspect's position would have understood his situation." *Id.* at 442 (holding that a defendant was not taken into custody where he was asked to step out of the vehicle, was questioned about his drinking, and failed a field-sobriety test, because he did not demonstrate that he was subjected to "restraints comparable to those associated with a formal arrest."); *see City of Cleveland v. Oles*, 152 Ohio St.3d 1, 2017-Ohio-5834, 92 N.E.3d 810, ¶ 30 (holding that the relevant inquiry is not whether a person would have *felt free to leave*, but rather "whether a reasonable person in the suspect's position would have understood himself or herself to be *in custody*." (Emphasis sic.)).

{¶14} The Ohio Supreme Court applied these principles in *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, ¶ 14, when it held that a defendant was in custody after a routine traffic stop because the officer patted him down, took his car keys, instructed him to sit in the front seat of his police car, and told the subject that he was going to search his car because he smelled marijuana. *Id.* at ¶ 3. The court reasoned that the defendant was "in custody for practical purposes" because "he had no car keys and reasonably believed that he would be detained at least as long as it

would take for the officer to search his automobile." *Id*. at ¶ 14. Thus, the defendant's admission about drug paraphernalia in the car, along with the paraphernalia itself, was inadmissible. *Id*. at ¶ 48-49; *compare State v. Leonard* 1st Dist. Hamilton No. C-060595, 2007-Ohio-3312, ¶ 22 ("[c]ompared to the facts in *Farris*, the intrusion * * * was minimal" because the defendant sat in the front seat of the police cruiser, was not handcuffed or patted down, and he kept his own keys); *see State v. Lukjare*, 5th Dist. Ashland No. 15-COA-038, 2016-Ohio-4613, ¶ 37 (holding that defendant was not in custody, despite being in the back of a police car because he was not handcuffed, his keys were not taken, and he was not subject to lengthy detention); *State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 19 (2d Dist.) (holding that the defendant was in custody where he was "ordered out of the vehicle by at least five officers at gunpoint, told to lie on the ground, and handcuffed").

{¶15} The state points to the factors set out in *Oles*, 152 Ohio St.3d 1, 2017-Ohio-5834, 92 N.E.3d 810, to demonstrate the Bailey was not subject to police interrogation. In *Oles*, the court synthesized prior decisions in *Berkemer, Farris,* and others, and identified three factors to consider when faced with custodial interrogation issues:

> questioning a suspect during a traffic stop in the front seat of a police vehicle does not rise to the level of a custodial interrogation when (1) the intrusion is minimal, (2) the questioning and detention are brief, and (3) the interaction is nonthreatening or nonintimidating.

*Id*. at ¶ 24.

{¶16} Notably though, Bailey was not yet in a police cruiser at the time of his admission. So, while these factors are helpful, we also consider the factors set out by

8

the Seventh District in *State v. Withrow*, 2022-Ohio-2850, 194 N.E.3d 804 (7th Dist.). In *Withrow,* the defendant was ordered out of the vehicle, patted down, and asked if there was any contraband on his person. *Id.* at ¶ 4-5. Withrow denied having anything on him, but apparently not believing him, the officer repeated back to him, "No?" *Id.* at ¶ 4- 5. Withrow then admitted to having marijuana on his person. *Id.* at ¶ 5. He was then handcuffed, taken away from his car, and told, "You're not under arrest, you're being detained." *Id.* at ¶ 46. The officer then asked, "Nothing else is on you but the weed?" and told Withrow that "he intended to search every pocket and every crevice of his body, and gave him what he referred to as the chance for 'honesty hour,' an opportunity to admit that he possessed any contraband that might be found in a search." *Id.* at ¶ 6. The officer then conducted a thorough search of his person and found additional drugs, a methamphetamine pipe, and $287. *Id.* at ¶ 7. Based on these statements and the evidence, his car was subsequently searched, and additional contraband was found. *Id.* at ¶ 9. On appeal, the court reasoned that relevant factors to consider when determining whether a subject was in custody for purposes of *Miranda* included "whether the subject was handcuffed at time of the statement," the number of police officers on the scene, and how many times a specific question is asked. *Id.* at ¶ 45. Considering all these factors, the court held that Withrow was in custody at the time of his first admission—even before being handcuffed. *Id.* at ¶ 57. Thus "all evidence, whether verbal or physical, obtained from the moment [the officer] asked his first question [was] inadmissible." *Id.*

{¶17} Here, it is undisputed that after Bailey exited his vehicle, he was handcuffed, searched, and taken away from his vehicle to a police cruiser. At the time of this interaction, there were at least five police officers and three police cruisers at

9

the scene. Bailey's car was entirely blocked in. Despite the officer's assurances that Bailey was not necessarily going to jail, we hold that, considering the totality of the circumstances, a reasonable person would have understood themselves to be in custody at the time of Bailey's admission.

{¶18} The intrusion here was not minimal. Although the interaction was brief, Bailey was handcuffed, patted down, led away from his vehicle, and subjected to repeated questioning about the contents of his vehicle, while headed for a police cruiser.

{¶19} The environment was also threatening and intimidating because the police presence at the scene was significant. Moreover, Bailey only admitted to having marijuana in the vehicle after he was threatened that police would run a K-9 unit around his car.[2] Similar to the custodial interrogations in *Farris* and *Withrow*, police suggested to Bailey that additional effort would be made to locate contraband in his vehicle. ("So if the dog walked around your car it wouldn't hit on anything? Marijuana or anything like that?").

{¶20} While the state contends that a K-9 open-air sniff is not the same as a search, it is still reasonable to conclude that it would evoke a similar response from someone in Bailey's position. Unlike a typical traffic stop, this was precisely the "kind of interrogation—designed to pressure a suspect to confess to illegal conduct—that was of particular concern to the Supreme Court in *Miranda*." *See Oles,* 152 Ohio St.3d 1, 2017-Ohio-5834, 92 N.E.3d 810, at ¶ 28 (noting that the police questioning in *Farris,* wherein an officer "made it known that he suspected illegal conduct * * *, told [the

---

[2] The trial court's entry denying the motion to suppress noted that "the drug dog was on scene and ready to be used," so we note that this was not an empty threat.

suspect] that he would search the car, and then asked about [contraband] that he might find in the car" exemplified a threatening and intimidating interaction).

**{¶21}** Similar to the defendant in *Withrow*, Bailey was handcuffed at the time of his statement, at least five police officers were on the scene, and he was asked about the presence of contraband multiple times before making his admission. *See Withrow*, 2022-Ohio-2850, 194 N.E.3d 804, at ¶ 45.

**{¶22}** Therefore, we hold that Bailey's statement about the marijuana in his vehicle was obtained in violation of *Miranda* and should have been suppressed, along with the firearm found during the subsequent search. Consequently, we sustain Bailey's assignment of error, reverse the judgment of the trial court, and remand the matter for further proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

**MYERS, P. J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.