[Cite as *State v. McElfresh*, 2014-Ohio-2605.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 13 CA 73 |
| RONALD L. McELFRESH | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common
Pleas, Case No. 12 CR 417


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      June 16, 2014


APPEARANCES:

For Plaintiff-Appellee            For Defendant-Appellant

KENNETH W. OSWALT            DENNIS W. MCNAMARA
PROSECUTING ATTORNEY       88 East Broad Street
JUSTIN T. RADIC               Suite 1350
ASSISTANT PROSECUTOR       Columbus, Ohio 43215
20 South Second Street, Fourth Floor
Newark, Ohio 43055

*Wise, J.*

{¶1}. Appellant Ronald L. McElfresh appeals his conviction in the Court of Common Pleas, Licking County, following a plea agreement, on several drug-related felony counts. The relevant facts leading to this appeal are as follows.

{¶2}. On August 3, 2012, Judge David Branstool of the Licking County Court of Common Pleas signed a search warrant regarding appellant's residence on Purity Road in St. Louisville, Licking County, Ohio. The impetus for the warrant was a fourteen-paragraph affidavit signed by Detective Doug Bline, a narcotics detective for the Newark Police Department and member of the Central Ohio Drug Enforcement ("CODE") Task Force, further analyzed infra.

{¶3}. Later that evening, officers with the CODE Task Force executed the search warrant. The officers ultimately seized approximately 578 grams of methamphetamine and 12,045 grams of marijuana, as well as other related items.

{¶4}. The State later conceded that five paragraphs of the application for the warrant contained information that was incorrect or inapplicable. Judge Branstool later stated, according to the oral proffer of defense counsel, that without those five paragraphs, he would not have approved the search warrant.

{¶5}. On August 10, 2012, under case number 12CR417, appellant was indicted by the Licking County Grand Jury. The case was not assigned to Judge Branstool. The counts were as follows:

{¶6}. Count I: One count of aggravated possession of drugs (methamphetamine), R.C. 2925.11(A)(C)(1)(e), a felony of the first degree;

{¶7}. Count II: One count of possession of marihuana, R.C. 2925.11 (A)(C)(3)(e), a felony of third degree;

{¶8}. Count III: One count of having weapons while under disability, R.C. 2923.13(A)(2) and/or (3), a felony of the third degree;

{¶9}. Count IV: One count of possession of drug paraphernalia, R.C. 2925.14(C)(1), a misdemeanor of the fourth degree.

{¶10}. Additionally, there was a one-year firearm specification attached to Counts I and II, as well as a forfeiture specification attached to Counts I, II, and III.

{¶11}. On November 1, 2012, appellant, via his first trial attorney, filed a motion to suppress. On January 7, 2013, appellant filed an amended motion to suppress. Appellant thereafter obtained new counsel. On April 8, 2013, his second trial attorney filed a supplemental memorandum in support of the previously filed motion to suppress. The State filed responses to appellant's motion to suppress on January 11, 2013 and April 15, 2013.

{¶12}. Appellant also issued a subpoena to Judge Branstool to testify at the suppression hearing. On April 12, 2013, the State filed a motion to quash said subpoena, which the trial court granted.

{¶13}. On April 15, 2013, the trial court conducted a suppression hearing. According to the testimony of Detective Bline, the confidential informant referenced in the search warrant affidavit initially approached the investigating officers and demanded $40,000.00 for his information. Tr. at 57. Eventually the CI provided the information without having received any money. Tr. at 58. The CI thereafter apparently recanted some of the information submitted in support of the application, claiming that persons

connected with appellant had threatened him. *See* Tr. at 36, 53. The CI's whereabouts were unknown by the time of the motion to suppress hearing. Tr. at 60.

{¶14}. On April 24, 2013, the trial court issued a written decision denying appellant's motion to suppress and reiterating its granting of the State's motion to quash the subpoena to Judge Branstool. Specifically, the trial court held that even after removing the paragraphs that were admitted to have been incorrectly included, the affidavit for the search warrant still set forth probable cause upon which a neutral and detached magistrate could believe a warrant should be issued.

{¶15}. On June 11, 2013, the trial court conducted a combined change of plea and sentencing hearing. Appellant pled no contest to all of the charges and specifications contained in the aforesaid August 10, 2012 indictment. The court then sentenced appellant to eleven years on the first count, plus one year consecutive for the attached firearm specification, and one year as to both the second and third counts. The trial court ordered that the sentences on the second and third counts be served concurrently, but consecutive to the first count. The court also imposed various fines on the counts, as well as an imposition of five years of mandatory post release control.

{¶16}. Appellant filed a notice of appeal on August 12, 2013. This Court granted leave to proceed on a delayed basis on September 23, 2013. Appellant herein raises the following two Assignments of Error:

{¶17}. "I. THE TRIAL COURT ERRED WHEN IT QUASHED THE SUBPOENA ISSUED TO THE JUDGE WHO APPROVED THE SEARCH WARRANT.

{¶18}. "II. THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS."

{¶19}. We will address the assigned errors in reverse order.

II.

{¶20}. In his Second Assignment of Error, appellant contends the trial court erred in overruling his motion to suppress the evidence seized following the execution of the search warrant. We disagree.

{¶21}. There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. The United States Supreme Court held in *Ornelas v. U .S.* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, that "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶22}. The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271. When issuing a search warrant, a trial judge or magistrate must make a practical,

common-sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. George* (1980), 45 Ohio St.3d 325, at paragraph one of the syllabus, citing *Illinois v. Gates* (1983), 462 U.S. 213, 238–239. As a reviewing court, we must accord great deference to the issuing judge's determination of probable cause. *See George,* at paragraph two of the syllabus. Doubtful or marginal cases should be resolved in favor of upholding the warrant. *Id.* The United States Supreme Court has held that the totality of the circumstances must be examined in determining whether probable cause existed for a search warrant. *Illinois v. Gates, supra.* "Probable cause" means only the probability and not a prima facie showing of criminal activity. *George, supra,* at 644. *See*, *also*, *Beck v. Ohio* (1964), 379 U.S. 89.

**{¶23}.** In essence, in reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant, our duty is to ensure that the magistrate or judge who issued the warrant had a substantial basis for concluding that probable cause existed. *See George*, *supra*, at paragraph two of the syllabus.

**{¶24}.** In the case sub judice, as recited previously, Judge Branstool, the judge issuing the search warrant of August 3, 2012, relied upon a fourteen-paragraph affidavit sworn by Detective Doug Bline. We will summarize the various sections of the affidavit as follows:

*Paragraph One*

**{¶25}.** In this introductory paragraph, Detective Bline identified himself as a narcotics detective for the Newark Police Department and CODE Task Force, with

sixteen years of experience in law enforcement. Bline stated that there was reason to believe that methamphetamine and related paraphernalia were concealed on the premises at 6022 Purity Road.

*Paragraphs Two through Six*

{¶26}. The next five paragraphs, incorrectly put in Bline's August 3rd affidavit, centered on information about a methamphetamine purchase of approximately $200.00 by an alleged buyer.

{¶27}. In this portion of the affidavit, Bline stated in sum as follows: CODE detectives had obtained information on August 24, 2011 from a confidential informant that Buyer had asked the CI for a ride to appellant's residence to buy drugs for her. The CI claimed to be familiar with appellant as a meth dealer. At the CODE detectives' request, Bline sent a text message to Buyer to see if she still needed a ride for the drug purchase. Buyer replied via text in the affirmative; the CI responded that he would get some "ice cream" that night, which the CI described as slang for methamphetamine. One of the detectives thereupon arranged for the CI to make a buy from appellant with the participation of Buyer, following which officers would make a traffic stop of the CI's vehicle. The CI was then provided with $350.00 in cash and fitted with an audio transmitter. Other detectives maintained surveillance as the CI picked up Buyer in Zanesville, drove her to a check-cashing facility, and then took her to appellant's residence on Purity Road. A short time later, the CI texted that the deal had been completed, and uniformed officers soon made a traffic stop of the vehicle near Fallsburg Road. In searching Buyer, a bag of suspected meth was found. The CI also provided another bag allegedly purchased from appellant.

**{¶28}.** However, the State later informed the trial court, prior to a decision on the motion to suppress, that the aforesaid averments were admittedly inaccurate or inapplicable and should be excised, apparently because Detective Bline had inadvertently left information from previous warrant paperwork in the text of his affidavit of August 3, 2012.

*Paragraphs Seven and Eight*

**{¶29}.** In this portion of the affidavit, Bline stated that CODE officers had used appellant as another confidential informant in 2010 during an investigation of large methamphetamine sales in the Columbus area. Appellant had admitted at that time to buying large amounts of "ice" from Mexican dealers and transporting it to Licking County to sell from his residence. However, appellant had also stated that he was "done selling meth." Bline also averred that from "late 2011 to March of 2012" he heard from "several individuals" that appellant was using automobiles with dealer tags to transport large amounts of drugs. Bline also stated that a Newark police officer had found appellant to be in possession of approximately $10,000.00 in cash during this time frame, which appellant maintained was the proceeds of a car sale.

*Paragraph Nine*

**{¶30}.** Detective Bline next averred that in March 2012 he began looking into appellant's alleged "large scale drug dealing" and alleged money laundering connected with a used car dealership on Purity Road. Bline stated he had been in contact with a BMV investigator who told him the car lot "appeared to be a sham."

*Paragraph Ten*

{¶31}. According to Detective Bline "[s]everal persons in 2011 to present have told me and other detectives that [appellant] is selling large amounts of drugs specifically meth and marijuana." In addition, "[s]everal people other than the two specific informants named later in this affidavit" had stated appellant's house has a "trap door in the floor" which is used to hide money and drugs and that appellant had "buckets" of meth. These persons also described appellant as "extremely paranoid."

### *Paragraph Eleven*

{¶32}. Detective Bline also related an incident in July 2012 wherein the Newark Police Department responded to a call of "shots fired" at David McElfresh. Bline indicated that information received from unspecified informants suggested that two men, Cole and Jason, owed appellant more than $40,000.00 for drugs. The informants stated that Jason believed he was shooting at appellant rather than David. Bline also averred that Detective Massaro had learned from a confidential informant that a few weeks before the July 2012 incident, Jason's father had shot at appellant on Orchards Street in Newark. Furthermore, "[a]ccording to informants this has caused a battle to rage between all the men ***."

### *Paragraph Twelve*

{¶33}. Bline then noted that in late July 2012, detectives from CODE came into contact with another confidential informant, referenced as CI-2. This person gave information that was "able to be substantiated by detectives." CI-2 reported that he made two meth purchases from appellant in July 2012, and he was able to give detectives two telephone numbers for appellant, which nonetheless were subsequently

changed. Bline asked CI-2 if appellant ever ran out of meth, to which CI-2 replied "there is always dope there."

*Paragraph Thirteen*

{¶34}. We will herein quote this paragraph of the Bline affidavit in its entirety:

{¶35}. "ON [sic] 8-2-2012 I talked with yet another informant (CI-3) who Det. Green has used in the past and has been proven reliable in the past on a weapons case. This ci came up to us and volunteered information. The ci said that he/she was at Ronnie's house (6022 Purity Rd) yesterday and saw what is estimated to be 12 ounces of meth in a bucket sitting next to the coffee table. The ci said that he/she had been at the address and actually stayed out there for a couple of weeks and at no time was there not meth in that bucket. The ci said 'the amount in the bucket will fluctuate but never will there not be meth in that bucket.' The ci detailed that there are several cameras set up around the property and if Ronnie is in the center room where the coffee table is he can't see the cameras but if he in [sic] the back he can see all around the house. The ci said it's nothing for Ronnie to lose or misplace an ounce of meth in the house or forget where he left 10 pounds of weed. The ci said that all the cash that Ronnie has if [sic] from the sale of drugs and that the car lot is just a front. The ci says that due to the violence between Ronnie, Cole and Jason, Ronnie has a handgun in the house. The ci confirmed that the gun has been seen with his/her own eyes."

*Paragraph Fourteen*

{¶36}. Finally, Bline averred that officers had "confirmed the accuracy of the address, and have also confirmed that no one unconnected to the illegal activity appears to frequent the address." Bline also stated that detectives had observed

security cameras on the porch area of appellant's residence, as reported by some of the confidential informants. Bline summarized that appellant has an arrest record that includes aggravated assault, assault, intimidation, burglary, and assault on a police officer. He requested that because drug dealers and users are frequently connected with weapons, and based on the potentiality for destruction of evidence, a night-time "no knock and announce" warrant be granted.

*Analysis and Conclusion*

{¶37}. In urging reversal of the denial of his suppression motion, appellant first maintains that paragraphs two through six should be ignored, which the State does not dispute. Appellant then contends that paragraphs seven and eight contain information that is too stale to be considered, and that paragraphs eight, ten, eleven, and twelve rely too heavily on uncorroborated hearsay. Appellant also charges that paragraph nine consists in large measure of speculation and opinion, and he directs us to evidence that Purity Auto Sales has not simply had a "handful" of sales, as Bline alleged. He likewise insists his telephone number at home has not changed since 2008 and his cell number remains the same as in 2010. Finally, appellant argues that the information in paragraph thirteen is comprised of unverified information or statements made with reckless disregard for the truth, and that paragraph fourteen carries little weight in determining probable cause.

{¶38}. Nonetheless, upon review, while we afford due deference to the decision of the judge issuing the search warrant (*George, supra*), we hold that based upon Detective Bline's affidavit, even without paragraphs two through six, there would have been a substantial basis for concluding that probable cause existed to support the

warrant's issuance. Having found no reversible error as to the validity of the search warrant, we hold the trial court did not err in denying the motion to suppress under the facts and circumstances of this case.

{¶**39**}. Appellant's Second Assignment of Error is overruled.

I.

{¶**40**}. In his First Assignment of Error, appellant argues the trial court erred in quashing the subpoena to Judge Branstool. We disagree.

{¶**41**}. An appellate court's standard of review on most evidentiary matters is that of abuse of discretion. *See State v. Morris* 132 Ohio St.3d 337, 972 N.E. 2d 528, 2012-Ohio-2407, ¶ 14; *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343. Accordingly, we generally apply an abuse of discretion standard when reviewing a trial court's decision to quash a subpoena. *See Petro v. N. Coast Villas Ltd.* (2000), 136 Ohio App.3d 93, 96, 735 N.E.2d 985. Specifically, "[i]n order to compel the testimony of a judge concerning matters learned in his or her official capacity as a judge, the proponent of the testimony must demonstrate that the judge's testimony is necessary and must demonstrate that no other witness could testify about the same matters." *State v. Johnson,* 4th Dist. Ross No. 94 CA 2004, 1995 WL 764319. *See, also, Inscoe v. Inscoe,* 121 Ohio App.3d 396, 417-18, 700 N.E.2d 70 (1997).

{¶**42**}. In the case sub judice, the testimony of Judge Branstool would clearly have been based upon information and knowledge gained in his official capacity as the judge who issued the search warrant herein. The trial court in this instance was provided with the general proffer that Judge Branstool would not have granted the search warrant had he known the first five paragraphs of the affidavit were faulty. We

find that his actual appearance as a witness at the suppression hearing would have accomplished little other than invading the province of the trial court to determine whether probable cause to carry out the search warrant still existed in the absence of the five paragraphs. As such, the trial court acted within its discretion in finding Judge Branstool's appearance via subpoena to be unnecessary. Moreover, despite appellant's reliance on case law from the federal courts on the practice (*see, e.g. U.S. v. Nunley,* 567 F.2d 822 (8th Cir. 1977)), we surmise that it would rarely serve the interest of justice to hale sitting Ohio trial court judges, already busy with their own dockets, into other courtrooms to articulate from the witness stand their prior reasoning on search warrants.

{¶43}. Accordingly, we find the trial court did not abuse its discretion in quashing the subpoena to Judge Branstool.

{¶44}. Appellant's First Assignment of Error is overruled.

{¶45}. For the foregoing reasons, the judgment of the Court of Common Pleas, Licking County, Ohio, is hereby affirmed.

By: Wise, J.

Hoffman, P. J., and

Delaney, J., concur.

JWW/d 0520